JAMES R. RUSSELL, Respondent, *v.* THE LEHIGH VALLEY RAILROAD COMPANY, Appellant.

1. MASTER AND SERVANT — SAFETY OF WORKING PLACE — NEGLIGENCE — FALL OF EMBANKMENT. Where one of a gang of workmen, employed by a railroad company under the direction of a competent foreman, in the excavation of a gravel bank with a steam shovel, which was moved forward on a temporary track as the bank was shoveled away, was injured by the caving in of an overhanging part of the bank, he cannot recover upon the theory that the company failed to furnish a safe place for its servants to work in, since the place where the men were to work changed from day to day, as the steam shovel moved on in its operations, and was necessarily such as the conformation of the embankment and the process of excavation made it; while the caving in of the embankment was an ever present possibility which required the exercise of active vigilance to guard against, the company had the right to delegate that duty to a foreman, and having furnished a concededly competent foreman, it is not liable for his negligence, or error in judgment, if any, in failing to perform that duty.

2. WHEN FAILURE TO FURNISH EXPLOSIVES TO BREAK DOWN TOP OF OVERHANGING EMBANKMENT DOES NOT CONSTITUTE NEGLIGENCE OF MASTER. The fact that the company had not furnished explosives, with the tools and other appliances provided, to break down the overhanging top of the embankment after the earth beneath had been taken away by the steam shovel, does not render the company liable where there is no evidence that explosives were demanded by the situation; that they were deemed necessary by the foreman, or would have been used by him, if furnished, and the evidence shows that no attempt was made before the accident, or at any other time, to pry off the top of the embankment with the tools and appliances furnished for that purpose; so that the negligence, if any there was, was that of the foreman, a fellow-servant of the plaintiff, and not that of the company.

*Russell* v. *Lehigh Valley R. R. Co.*, 112 App. Div. 903, reversed.

(Argued April 15, 1907; decided April 30, 1907.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered March 24, 1906, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Eugene Diven* for appellant. The alleged negligence of the defendant in failing to supply explosives was not the proximate cause of the accident. (*Hofnagle* v. *N. Y. C. & H. R. R. R. Co.*, 55 N. Y. 608; *Loughlin* v. *State*, 105 N. Y. 159; *Miller* v. *Thomas*, 15 App. Div. 105; *Perry* v. *Rogers*, 157 N. Y. 251; *Crown* v. *Orr*, 140 N. Y. 450; *Baker* v. *Sutton*, 11 App. Div. 271; *Maltbie* v. *Belden*, 167 N. Y. 307; *Naylor* v. *C. & N. Ry. Co.*, 53 Wis. 661; *Bell* v. *C. G., etc., Co.*, 36 App. Div. 242; *McCosker* v. *L. I. R. R. Co.*, 84 N. Y. 77.)

*Albert T. Wilkinson* for respondent. The defendant was negligent. (*Simone* v. *Kirk*, 173 N. Y. 13; *Cone* v. *D., L. & W. R. R. Co.*, 81 N. Y. 206; *Ellis* v. *N. Y., L. E. & W. R. R. Co.*, 94 N. Y. 546; *Stringham* v. *Stewart*, 100 N. Y. 516; *Coppins* v. *N. Y. C. & H. R. R. R. Co.*, 122 N. Y. 557.) Defendant's negligence was the proximate cause of the injury. (*Cone* v. *D., L. & W. R. R. Co.*, 81 N. Y. 206; *Rider* v. *S. R. T. Ry. Co.*, 171 N. Y. 139; *Kremer* v *N. Y. E. Co.*, 102 App. Div. 433; *Murphy* v. *Leggett*, 164 N. Y. 121; *Phillips* v. *N. Y. C. & H. R. R. R. Co.*, 127 N. Y. 657; *Cohen* v. *Mayor, etc., of N. Y.*, 113 N. Y. 513; *Kunz* v. *City of Troy*, 104 N. Y. 344; *Ring* v. *City of Cohoes*, 77 N. Y. 83; *Lilly* v. *N. Y. C. & H. R. R. R. Co.*, 107 N. Y. 566.) The risk was not obvious and it cannot be said as a matter of law that the plaintiff assumed it. (*O'Brien* v. *Buffalo Furnace Co.*, 183 N. Y. 317; *Finn* v. *Cassidy*, 165 N. Y. 589; *Davidson* v. *Cornell*, 132 N. Y. 228; *Kain* v. *Smith*, 89 N. Y. 375; *Jenks* v. *Thompson*, 179 N. Y. 20; *Welle* v. *Celluloid Co.*, 175 N. Y. 401; *Witkowski* v. *Carter*, 60 App. Div. 577; *Griffin* v. *I. Ry. Co.*, 62 App. Div. 551; *Makin* v. *P. C. P. Co.*, 111 App. Div. 726; *Lynch* v. *A. L. Co.*, 113 App. Div. 502.)

GRAY, J.  The injuries, because of which the plaintiff has brought this action, were sustained while in the defendant's employment and under the following circumstances. The

defendant was operating a steam shovel for the removal of gravel and earth from a bank on one side of its main track. The car containing the shovel and its machinery was upon a temporary track, laid between the bank and the railway, and the work was in charge of a foreman; who, so far as it appears, was competent. The plaintiff came upon the work, while it was in progress and four days before meeting with his accident. His duty was to attend to one of the four jack-screws, which were placed under each corner of the shovel car and which served to keep it steady while the shovel was in motion. At the place where the accident occurred, the bank was about twenty-one feet in height, sloped gradually from the top and was composed of a thick layer of hard clay above, with loose earth, or gravel, below. When the bank was shovelled away, as far as the reach of the shovel ahead permitted, the temporary track was shifted on and the shovel car moved forward. In that way, the situation changed from day to day, at the rate of some twenty feet. Just prior to the accident, the plaintiff was directed by the foreman to attend to his jackscrew; which was upon the side of the shovel car next to the bank. He had tightened up his screw and was gathering up his " blocking," when, suddenly, the bank caved in and a part of the overhanging top fell upon him.

The plaintiff recovered a judgment against the defendant; which was affirmed by the Appellate Division, by a divided vote.

Negligence is, generally, charged against the defendant for the failure to furnish a safe place for the plaintiff to work in and suitable tools and appliances for doing the work of excavation. Particularly, it is insisted that the defendant was neglectful of the duty to furnish explosives, with which to break off, or to prevent, overhanging ledges, and the case was submitted to the jury upon that theory. The jurors were told, in effect, that the plaintiff's case depended upon the evidence establishing that the accident was the result of the lack of explosives.

This was not a case for the application of the rule that the master must furnish a reasonably safe place. The place where the men were to work changed from day to day, as the steam shovel moved on in its operations. It was, necessarily, such as the conformation of the embankment and the process of excavation made it. The kind of work, which the men were employed to do, was such as to make the possibility of a fall of earth an ever present one and called for the exercise of active vigilance to guard against their being involved in it. The situation was one which made it the duty of the foreman to watch each supervening condition, during the progress of the work, and to warn the men. They were not excused themselves, of course, from being vigilant to observe conditions. The master's liability, in this case, is determined by common-law rules and is not predicated upon statute. If the defendant set the men at work under a competent foreman and with suitable appliances, it had performed its duty towards them and the execution of the details of the work could, properly, be intrusted to the judgment of the foreman. For his negligence, or for his mistakes in judgment, as to such, it could not be made liable for injurious results.

Now, with respect to the claim that the defendant is liable, because of its failure to furnish explosives, with the other tools and appliances in the car, it is clear that can, only, be a tenable one, provided the evidence disclosed that an emergency arose when it was judged that they were necessary and they could not be had. Experts were examined to show that explosives were used, in certain cases, to break away overhanging ledges and there was evidence that, at some time previously, the foreman had spoken of sending for dynamite. It may be assumed that, in this case, the use of explosives might have been efficient; but it was not shown that the foreman would have used them upon the occasion in question and it was not shown that there was any demand for them, or that they were deemed by him to be necessary. There were picks, bars and other tools; but there was no attempt to use them to pry off the top of the bank, then, or at any other time, as was shown to be a usual

method. If they had been used, and had proved ineffectual for the purpose, it might then be claimed, with some force, that the men were inadequately provided with appliances. It was necessary, before the defendant could be charged with a neglect of duty, to show that efforts to change, or to improve, the situation had been rendered abortive through the insufficient supply of the means to meet it. There was nothing to show this to have been the case and if the occurrence is attributable to the omission of the foreman to make use of the tools at hand, or to procure further appliances, the fault was that of a fellow-servant and not of the defendant. A jury's speculation upon the situation cannot be allowed to affect the question of the master's liability. The performance of the work was committed to the foreman's supervision and judgment, and there is no complaint of his lack of skill. If he chose to operate his shovel, solely, upon the bank, when a better judgment would advise the resort to additional methods for breaking it down, the fault was his and not that of the defendant. If he failed to be watchful and omitted to warn the plaintiff, seasonably, of the peril, again, the latter suffered from the fault of his fellow-servant. The thing to be done at the time was a detail of the common work upon which all were engaged. The caving in of the bank was the result of the operation of the shovel. The ledge that fell was the condition of that day and not a condition that had existed, and the cause of its fall was the removal of the earth beneath.

The case is not within the authority of *Simone* v. *Kirk*, (173 N. Y. 7); which was, altogether, exceptional in its character. There, the laborer was killed by the fall of a projecting mass of material, under which he had been directed to work. The condition had existed for several days before he came upon the work; he was unacquainted with its condition and he was sent by the foreman to work under it in the night time and with but a dim light. The rule applicable to this case is to be found in the decisions of the cases of *Loughlin* v. *State of New York*, (105 N. Y. 159); *Perry* v. *Rogers*, (157 ib. 251) and *Capasso* v. *Woolfolk*, (163 ib. 472). In the last two of

these cases, the plaintiffs were injured by the falling of stones from the sides of a bank, or rock, which was being cut down by blasting operations. The judgments recovered by them were reversed by us, upon the ground that the removal of these stones was a detail of the work and the negligence of the foreman, in that respect, was that of a fellow-servant. What were details of the work the master had the right to intrust to a competent foreman and where the situation was, in the nature of things, a changing one, there was no continuing duty to provide a safe place for the workmen.

If there was negligence in this case, which was the cause of the plaintiff's injuries, it was that of his fellow-servant, the foreman, and that was a risk which he assumed when entering upon the employment.

I think that the judgment should be reversed and that a new trial should be ordered; with costs to abide the event.

CULLEN, Ch. J., EDWARD T. BARTLETT, HAIGHT, WERNER and WILLARD BARTLETT, JJ., concur; HISCOCK, J., takes no part.

Judgment reversed, etc.