CHARLES A. BROWN *v.* PEOPLE'S GAS LIGHT COMPANY.

May Term, 1905.

Present: ROWELL, C. J., TYLER, WATSON, HASELTON, and POWERS, JJ.

Opinion filed October 30, 1908.

*Master and Servant—Injuries to Servant—Master's Duty as to Safe Place When Suitable Materials and Equipment are Supplied—Caving of Ditch—Foreman's Failure to Warn And to Use Supplied Shoring—Fellow Servants—Inapplicable Instruction.*

Although a master owes his servant the nondelegable duty of providing and maintaining a reasonably safe place wherein to work, that duty does not require the master to supervise the merely executive details of the work as it progresses.

Where a master provides materials and equipment suitable to make reasonably safe the place wherein his servant is required to work, and furnishes a foreman competent properly to use and apply them, he fully discharges his duty in that regard, and is not liable for any injury to his servant resulting from the negligent act or omission of the foreman in respect of the use of such materials or equipment; for such negligence is the negligence of a fellow servant.

In an action by a servant against his master for injuries caused by the caving of a ditch wherein he was working under direction of his foreman, whose competency was not questioned, defendant's motion for a directed verdict should have been granted, where it appeared that defendant had supplied plank and bracing timbers with which to protect dangerous places, although it appeared that, while plaintiff was in the ditch and before the accident, but without his knowledge, a crack parallel with the ditch developed through the embankment of excavated soil along its margin, to which another workman called the foreman's attention, suggesting that the bank ought to be braced to prevent caving, and the foreman answered that it would stand till plaintiff's work was finished, failed to brace the bank, and gave plaintiff no warning, and that the bank caved along this crack.

Defendant is not liable on the ground that it was his duty to warn plaintiff of the danger indicated by the crack, and which was known to defendant but unknown to plaintiff; for that danger was not, in a legal sense, latent, and the foreman's failure to warn, like his omission to use the supplied shoring, was the negligence of a fellow servant.

The instruction that it was not plaintiff's duty, when ordered into the ditch, to examine the surroundings to see whether there were any indications of special danger, was inapplicable, as no such indication had then appeared.

CASE for negligence. Plea, the general issue. Trial by jury at the September Term, 1904, Rutland County, *Munson,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted.

At the close of all the evidence the defendant moved for a directed verdict in its favor for that the evidence is not sufficient to warrant a verdict for plaintiff, and if there was any negligence, it was that of a fellow servant; that plaintiff assumed the risk and was guilty of contributory negligence; that it appears that plaintiff had as much knowledge of the situation, and could discover the danger, as well as anyone else; and that the risk in question was not one against which defendant was bound to provide. Motion overruled, to which defendant excepted.

Among other instructions to which defendant excepted was the following: "But if the plaintiff was directed to dig this bell hole, in the manner and circumstances disclosed by the evidence, it was not his duty to delay the work and make an examination of the surroundings to see if there were any indications of special danger."

*Butler & Moloney* for the defendant.

The risk of the ditch caving was incident to plaintiff's employment, and so assumed by him. The danger was obvious. *Skinner* v. *C. V. R. R. Co.,* 73 Vt. 340; *Carbine* v. *B. & R. Co.,* 61 Vt. 348; *Latremouille* v. *B. & R. R. Co.,* 63 Vt. 336; *Sias* v. *Consolidated Lighting Co.,* 73 Vt. 38.

The court also erred in submitting the case to the jury, for the only negligence claimed is that of the foreman, and he was

a fellow servant of the plaintiff. *Lambert* v. *Pulp Co.*, 72 Vt. 282; *Garrow* v. *Miller*, 72 Vt. 285. The rank or grade of the servant does not determine his status as to being a fellow servant, but the character of the act or omission complained of. *Hays* v. *Colchester Mills*, 69 Vt. 1; *McElligott* v. *Randolph*, 29 Am. St. 180; *McLaine* v. *Head & Dowst*, 71 N. H. 294.

The place in which the plaintiff was at work was constantly changing, by the digging of the bell hole under the bank. He knew this. He did not even rely on the foreman. He did not expect him even to warn him, but knew more of the danger himself than did the foreman. *Armour* v. *Hahn*, 111 U. S. 313; *Zeigler* v. *Day*, 123 Mass. 152; *Mast* v. *Kern*, 75 Am. St. Rep. 580; *Hawkins* v. *Standard Sugar Ref. Co.* 122 Mass. 400.

*E: H. O'Brien* and *O. M. Barber* for the plaintiff.

The ditch was the place prepared by the defendant in which the plaintiff was required to do the work which it was his principal duty to perform, i. e., dig bell holes. It was the defendant's duty to furnish him a reasonably safe place in which to do this work. This duty is strictly enjoined upon the master and although it may be delegated, yet if the person to whom it is delegated is negligent in its performance his negligence is the negligence of the master. *Davis* v. *Central Vt. Ry. Co.*, 55 Vt. 84; *Mahoney* v. *Granite Co.*, 184 Mass. 287; *Houston* v. *Brush & Curtis*, 66 Vt. 331; *Chicago etc. Brick Co.* v. *Sobkowick*, 36 N. E. 572; *Elledge* v. *Nat. City Ry.*, 100 Cal. 282, 38 Am. St. Rep. 290; *Pantzar* v. *Mining Co.*, 99 N. Y. 368; *Wilson* v. *Willimantic Co.*, 50 Conn. 433; *City of LaSalle* v. *Kostka*, 60 N. E. 72.

"The rule that the servant assumes the ordinary risks incident to the business presupposes that the master has performed the duties of care, caution, and vigilance which the law casts upon him." It all became a question of fact for the jury —and in this case their finding is against the defendant. *Kranz* v. *L. I. R. R.*, 123 N. Y. 1; *Albanese* v. *Central R. R.*, 70 N. J. L. 241; *Hennessey* v. *Boston*, 161 Mass. 502.

It is the duty of the master, having control of the times, places and conditions under which the servant is required to labor, to guard him against probable danger in all cases in which

that may be done by the exercise of reasonable caution. *Mc-Govern* v. *C. V. R. R.*, 123 N. Y. 280; *Bartholomeo* v. *McKnight*, 178 Mass. 242; *Van Steenburg* v. *Thornton*, 58 N. J. 160.

If in the progress of the work the place becomes dangerous or hazardous in a way or manner not known, or the knowledge of which cannot be chargeable, to the servant, and the same becomes known or ought to have became known to the master and there is not opportunity to repair the same before an accident may happen, it then becomes the manifest duty of the master to warn the servant that he may at once escape from his peril. *Mahoney* v. *Granite Co.*, 184 Mass. 287; *Bellville Stone Co.* v. *Mooney*, 61 N. J. L. 253; *Fitzsimmons* v. *Taunton*, 160 Mass. 223; *Pullman Car Co.* v. *Loack*, 143 Ill. 242, 18 L. R. A. 215.

POWERS, J.   Among the nondelegable duties which a master owes his servant, is that of providing and maintaining a reasonably safe place in which to work.   But this rule does not require the master to supervise the merely executive details of the work as it goes along.   *These* are acts of service, and are within the proper range of the servant's duties.   They may be delegated to a competent co-servant, and when so delegated, negligence therein, though resulting in injury, will not support an action against the master.   And it matters not whether the offending servant be a foreman, overseer, superintendent or a mere fellow-workman; the result is precisely the same, the master is not legally responsible; for it is the character of the act in question which determines.   So it is that when a master provides his servant with suitable materials and instrumentalities to make safe the place, and a competent foreman to use and apply them, he fully discharges his legal duty, and the negligence of the foreman in the manner in which the appliances are used, or in failing to make use of them at all, will not establish liability on the part of the master.   Many cases support this rule and illustrate its application.   Thus, in *Davis* v. *So. Pac. Co.*, (Cal.) 35 Am. St. Rep. 133, the plaintiff's intestate was a section-man on the defendant's railroad, and was acting under a foreman named Bresnahan.   By direction of the latter, he ran a hand-car onto a siding to clear the main line for an approaching train,—Bresnahan setting the switch for that purpose.   Bresnahan having failed to close the switch, the

train took the siding, collided with the hand-car, and killed the intestate, who was at work under the car making some unimportant repairs. It was held that it was the duty of the company to provide a suitable switch, and competent servants to operate it; and that when it had done so, its duty toward the intestate was fully performed. That the duty violated did not relate to the place of work, but to the negligent use of an appliance or instrumentality which was proper and suitable for the purpose for which it was furnished, and that such use of it was simply a detail of the work or management of the business, and that Bresnahan was a fellow servant. A recovery against the company was denied.

Again, in *Kelley* v. *New Haven Steamboat Co.*, 74 Conn. 343, 50 Atl. 871, it was held that a ship-owner, who had furnished a proper fender to be used, when necessary, in making the boat fast to the wharf, was not liable to one of the crew for the negligence of the mate in failing to use the fender, whereby he was injured; and that it was not a personal duty of the company to see to it that the fender was actually made use of. The same rule was applied in *Tilley* v. *Light & Power Co.*, (N. H.) 67 Atl. 946. There the plaintiff was engaged in cleaning out a gas-main under the direction of a foreman who had charge of the defendant's gas department. The main was provided with valves which, if closed, would cut off the flow of gas through the main. Through the neglect of the foreman to close these valves, an explosion occurred which injured the plaintiff. It was held that the operation of the valves was an act of service purely, and the negligence that of a fellow servant. The court says: "The defendants, having provided proper appliances for securing safety to their employees, were not chargeable with the nondelegable duty of properly operating them. They were at liberty to intrust the operation of the appliances to any of their employees, provided only they exercised ordinary care in selecting the employee; and it is not contended that they failed in this respect in this instance. At best, so far as appears by the testimony, the acts required to secure safety of the place were mere acts of service which the defendants might properly delegate to their employees. The plaintiff's position is not strengthened to any degree by attributing his injury to want of safety in the place, for such

course leads to the same result, namely, that the negligence was that of a co-employee of the plaintiff, for which the defendants are not responsible.''

Cases much like the one in hand are not wanting:

In *Zeigler* v. *Day,* 123 Mass. 152, the defendant was a contractor engaged in the construction of a sewer through the streets of Cambridge. The plaintiff was at work for him excavating a trench through soil more or less sandy, under the direction of one Winning, who had charge of the work as superintendent, and whose skill and competency were admitted. For the safety of the men in the trench, it was necessary, in some places, to shore up the sides. The necessity for this, as well as the proper mode of applying the safeguards was, from the nature of the case, left to be determined by the superintendent as the work progressed. There was no evidence that the defendant failed to furnish sufficient and suitable material for the construction of the required safeguards, or that he was chargeable with any specific personal neglect or knew of the cause of this injury, though he was occasionally present as the work went on. In granting a non-suit, the court said: ''In the case at bar, the work was committed to the supervision of a skilful and competent superintendent; it required for the protection of the men the frequent use of temporary structures, the location and erection of which, as the digging progressed was a part of the work in which the superintendent and the men under him were alike employed, and for the preparation of which, as in case of the scaffold of the mason or the carpenter, the master is not liable, unless there is something to show that he assumed it as a duty independent of the servant's employment.''

In *Floyd* v. *Sugden,* 134 Mass. 563, the plaintiff was engaged in uncovering a penstock belonging to the defendant under the direction of one Gilman, who had full charge and control of the premises and the work. A trench had been opened up to get at the penstock, and while at work therein, at the bottom of the trench and on the top of the penstock, the latter gave way, and the sides of the trench caved in upon him and caused the injuries complained of. It appeared that the trench was dug in very sandy soil, and the evidence tended to show that the sides ought to have been shored up. No shoring was used, and none specifically furnished. But the evidence

tended to show that there was an abundance of suitable materials belonging to the defendant within a few rods of the place of the accident,—though this was contested.    "If the defendant," says the court, "furnished the materials, the appliances, for doing this, [shoring the trench] the use and application of them, according to the exigencies of the work, was the duty of the servants engaged in the work, unless specially assumed by the master.    Gilman, as superintendent of the work, and the plaintiff, as a laborer upon the work, were fellow servants and the duty of Gilman in using the means and appliances provided for safely and properly carrying on the work was that of a servant engaged in the same business with the plaintiff, even if he had acted as a representative of the master in furnishing such means and appliances."

In *Dube* v. *Lewiston*, 83 Me. 211, 22 Atl. 112, the plaintiff was engaged with others in digging a trench for a sewer.    No shoring was used to support the sides of the trench, and it caved in and injured the plaintiff.    The construction of the sewer was under the general supervision of the street commissioner, but the crew in which the plaintiff was at work at the time of his injury was under the immediate direction of one Cloutier, as foreman,—the street commissioner incidentally inspecting the work from time to time as it progressed.    Thirty rods away was deposited a quantity of lumber designed to be used for shoring, which was suitable and available for the purpose.    At the time of the accident, the commissioner was not present, and the work was in the sole charge of Cloutier. Nothing had been disclosed before the work commenced indicating a necessity for any mechanical contrivance to protect the workmen.    The location and erection of any such structures necessarily devolved upon the workmen acting under the direction of the foreman, as the digging progressed.    The duty of determining when the exigency of the situation required such protection had not been specially assumed by the commissioner. It was held that the commissioner discharged his duty when he assigned to the work an experienced and competent foreman and furnished him with suitable and sufficient materials for any appliances necessary for the safe conduct of the work; and that the use and application of such materials formed a part of the duty of the workmen; and if Cloutier's failure to shore

up the trench where the dirt caved was negligence, it was the negligence of a fellow servant.

In *Berquist* v. *Minneapolis,* 42 Minn. 471, the plaintiff was digging a ditch for a water pipe, under the general control of a foreman employed by the city. In carrying on the work, it became necessary to shore up the walls of the ditch. This was done by planking the sides and bracing these planks by timbers extending across the ditch. This work was done by the men as occasion required. Suitable material was provided for that purpose. At the time of his injury, the plaintiff was shoveling in the ditch at a point where it was some six feet deep. Some of the shoring was then in place, and while further work was being done to hold the earth in place, the shoring fell in, causing the injury complained of. The negligence relied upon was in the manner in which the curbing was done. It was held that this was the negligence of the plaintiff's fellow servants, and that the city was not liable.

Sometimes the same result is reached in such cases by saying that the safe place rule does not apply where the prosecution of the work itself makes the place and creates its dangers. *O'Connell* v. *Clark,* 48 N. Y. Supp. 74; *Cleveland, C. C. & St. L. Ry. Co.* v. *Brown,* 73 Fed. 970; *Norman* v. *Southern Ry. Co.,* (Tenn.) 104 S. W. 1088. But it seems to us more logical to put the case upon the broad ground that the master has fully complied with the safe place rule when he has provided against such dangers as may reasonably be apprehended by furnishing the servant with the means of protecting himself. *Durst* v. *Carnegie Steel Co.,* 33 Atl. 1102. This puts the determination of the question of liability upon its true ground,—the character of the act or omission which caused the injury. It properly differentiates the duties of the master from those of the servant. It makes the foreman a fellow servant because he has exhausted his functions as the *alter ego* of the master when he has provided the means of protection,—and at that very point he takes up the functions of a fellow laborer. See *Church, Kerr & Co.* v. *Callaghan,* 155 Fed. 397; *Rocco* v. *Gillespie Co.,* (N. J.) 64 Atl. 117; and the instructive note to *LaFayette Bridge Co.* v. *Olsen's Admr.,* 54 L. R. A. 1.

These cases are in harmony with our staging cases,—*Lambert* v. *Pulp Co.,* 72 Vt. 278, and *Garrow* v. *Miller,* 72 Vt. 284,—

and under their authority the defendant's motion for a verdict should have been granted. This defendant was engaged in laying a gas main in the city of Rutland. The plaintiff was a shoveller employed on the job. At the time and place of the accident here involved, a ditch had been excavated to the depth of five or six feet, which was some eighteen or twenty inches wide at the bottom, and somewhat wider at the top. The dirt from this ditch had been thrown up on the east side. The soil was of different kinds in layers, with what is described as "blue gravel mixed with cobble," beneath which was a layer which looked light and hard, but which became, as the workmen stood in it, soft and wet. The foreman in charge of the work was one Miles, whose competency was not questioned and who was under the general authority of the defendant's superintendent, who was occasionally present as the work went on, but not at the time of the plaintiff's injury. One Shelvey was the man who calked the joints of the pipe after it was laid in the ditch. Before the pipe was laid, it was necessary to grade properly the bottom of the ditch, and at the points where the joints of the pipe came, to dig out bell holes,—to give the calker sufficient room to use his arm in tamping the joint. The bell holes were made by digging out the sides and bottom of the ditch four or five inches. At the time of his injury, the plaintiff was directed by Miles to go into the ditch and dig out a bell hole, and to hurry about it so that the joint could be calked before night. The walls of the ditch were not shored up, though the defendant's superintendent testified (and this was not in any way contradicted) that the defendant supplied planking and bracing timbers to protect dangerous places, if any occurred. The plaintiff entered the ditch pursuant to Miles' order and began the work assigned him. While so engaged, he encountered a stone in the bank, and while digging around it to remove it, the east bank caved onto him and caused the injuries herein sued for. After the plaintiff went into the ditch and before the bank caved, a crack appeared in the dirt thrown up from the ditch running along parallel with the ditch, to which the calker called Miles' attention, suggesting that the bank ought to be braced to prevent caving. Miles replied in substance that it would stand long enough to get the joint calked, and gave the plaintiff no warning. The bank caved along this crack.

It is urged that the foreman's knowledge of this crack and the plaintiff's ignorance of it save the case for the plaintiff, on the ground that it became the duty of the master to warn the servant of a danger known to him but unknown to the servant. Such is not the case. The danger was not, in a legal sense, latent. The crack was not so much the source of danger as it was the manifestation of it. But in any view, it was in character obvious, though unseen by the plaintiff. The duty to warn is coextensive with the duty to exercise care. If it was the duty of the master to protect the plaintiff from the danger which threatened, it was his duty to warn him of the imminence of the danger indicated by the crack; otherwise, not. So it comes back to the question hereinbefore discussed. However great the moral obligation resting on the foreman to warn the plaintiff, his fellow laborer, he did not, in his neglect to do so, represent the defendant,—for the master's duty had been fully performed. The omission of the foreman in this behalf, like his omission to make use of the shoring, was his own, and not that of his master,—an omission which comes within the fellow servant rule. *Anderson* v. *Winston*, (Minn.) 31 Fed. 528.

The instruction to the effect that it was not the duty of the plaintiff, when ordered into the ditch, to delay the work and make an examination of the surroundings to see if there were any indications of special danger, was inapplicable, as no such indications had then appeared and such an examination would have discovered none. The other exceptions have been sufficiently covered.

*Judgment reversed and judgment for the defendant to recover its costs.*