getting the letter of credit from day to day, in numerous conversations up to about May 22d; but it appears from defendant's testimony, and from his letter of May 6th, that he had bought the goods elsewhere, and on April 16th he had written plaintiff "calling the deal off." Defendant says the last letter related to the transaction of March 4th, and this is consistent with the plaintiff's letter of that date to his Yokohama correspondent, already referred to. Defendant's version, that there was no positive order given, but that the parties were merely trying to arrive at a proper assortment of sizes and patterns, is not inconsistent with his attempts to arrange for a letter of credit, which he was required to furnish if an order should be finally made up and given; but, on the other hand, if a seller makes a letter of credit one of the terms upon which he will sell $15,000 of goods to be manufactured and imported, is it probable that he will let the order go to execution, not only when he has not received the letter of credit, but with knowledge that the purchaser was having difficulty in procuring it?

Defendant swears that he never gave an order; that the transactions between him and plaintiff consisted merely in selecting patterns and fixing upon proper assortments of sizes and quantities, if an order should be given finally. In this he is corroborated by plaintiff's letters of March 4th and 18th to the Yokohama correspondent, already set out, and I think he is also corroborated by the circumstance, already referred to, that the letter of credit, which plaintiff swears was one of the terms of the sale, was not given. Defendant also denies plaintiff's story as to the transaction on April 10th, but says that he received the letter of that date by mail, and that the inclosure mentioned (Exhibit 8) was handed to him by plaintiff on the next day; that he then told plaintiff he had given no order, and returned to him the papers purporting to cover the items of such order. In this he is corroborated by his receiving and shipping clerk, who swore that he had seen plaintiff in defendant's place of business several times; that about April 10th or 11th he saw him there, in the office room, and heard parts of a conversation between plaintiff and defendant at that time; that plaintiff said, "This is the order;" and defendant said, "See here, Schopflocher; we never ordered these goods; take it all back;" and that he saw a piece of paper pass between them.

The proof is not sufficient to justify the judgment against the defendant for $1,500. The judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event.

---

## COVIT v. TUCKER ELECTRICAL CONST. CO.

(Supreme Court, Appellate Term. January 21, 1910.)

1. MASTER AND SERVANT (§ 190*)—INJURY TO SERVANT—SAFE PLACE—NEGLIGENCE.

　　Plaintiff, employed by defendant, a contractor for electrical work in a tunnel, being directed to do work in the roof, and finding no ladder, arranged a plank as a platform, by placing it over an iron pipe resting on a

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ledge along the side of the wall and running the end under a metal flange in the wall. *Held*, that there was no negligence of defendant as regards a safe place to work, the only place claimed to be unsafe being the plank, which fell because of the iron pipe, which was unfastened, rolling off, such platform having been constructed by plaintiff, and it being immaterial that he did so under the advice and in the manner suggested by defendant's foreman, who was competent, so that defendant was not liable for his negligence, or for his errors of judgment in a mere detail of the work in which he was engaged with plaintiff.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 449–474; Dec. Dig. § 190.*]

2. MASTER AND SERVANT (§ 116*)—NEGLIGENCE—ADEQUATE APPLIANCES.

Plaintiff, employed by defendant, a contractor for electrical work in a tunnel, being directed to do work in the roof, and finding no ladder, arranged a plank as a platform, by placing it over an iron pipe, resting on a ledge along the side of the wall, and running the end under a metal flange in the wall. The plank, with plaintiff on it, fell because of the pipe, which was not fastened, rolling from its place. *Held*, that defendant was not negligent in the matter of furnishing safe and adequate appliances to work with, because of the pipe not being fastened; the pipe not having been constructed by defendant, and not being under its control, but having been constructed to conduct air under a low pressure, and having been safe for such use.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 207; Dec. Dig. § 116.*]

3. MASTER AND SERVANT (§ 116*) — INJURY TO SERVANT — NEGLIGENCE—ADEQUATE AND PROPER APPLIANCE.

A master cannot be held negligent in the matter of furnishing adequate and proper appliances, on the ground that it had not furnished enough ladders; it appearing that the servant adopted the foreman's suggestion of using a plank, instead of a ladder, without exhausting available methods of procuring a ladder, there having been ladders there, but he having merely found none, not in use, while walking along a tunnel to the place therein where he was assigned to do some work, and it appearing that one could be had on an order.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 207; Dec. Dig. § 116.*]

4. MASTER AND SERVANT (§ 190*)—INJURY TO SERVANT—NEGLIGENCE OF FOREMAN.

A master, having selected a proper and competent foreman, can leave the details of work to his judgment; and for his errors of judgment, or negligence, in adjusting in a certain way a plank for an employé to work on, and in selecting the specific place for adjusting it, the master is not liable to the employé.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 449–474; Dec. Dig. § 190.*]

Appeal from Municipal Court, Borough of Manhattan, Third District.

Action by John P. Covit against the Tucker Electrical Construction Company. From a judgment on a verdict for plaintiff, defendant appeals. Reversed, and new trial ordered.

Argued before GIEGERICH, DAYTON, and LEHMAN, JJ.

Frank V. Johnson (Edward J. Walsh, of counsel), for appellant.
Kilroe & Schwartz, for respondent.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep't Indexes

GIEGERICH, J.   The action is at common law for negligence. The plaintiff was employed as an electrician by the defendant upon work in the north-bound tube of the McAdoo tunnel or subway of the Hudson & Manhattan Railroad Company, running from the Erie Railroad station in Jersey City to the Lackawanna Railroad station in Hoboken, N. J.   At the time of the accident which gave rise to this action he had been so employed for about two months.   On July 21, 1909, he reported for work to the foreman in charge of one of the sections of the tunnel, part of whose duty it was to assign the workmen to their work for the day.   The plaintiff was directed by the foreman to go to caisson No. 3 and there to occupy himself in putting up certain "receptacles" in the top or roof of the tunnel.   The roof was about 12 feet above the railroad tracks which had been laid through the tunnel.

The plaintiff testified that he asked the foreman for a ladder for use in the work indicated, and that the foreman said he did not know whether there was one around or not, but to go ahead and use a piece of plank.   The plaintiff also testified that he looked around for a ladder, but could not find any, and that he looked further as he walked along in the tube to the place to which he had been detailed, but could not find any that were not in use.   The plaintiff accordingly procured a plank, and, placing one end underneath a flange in one of the metal plates forming the side of the tube or tunnel, rested the plank upon an iron pipe which lay upon concrete blocks about four inches square, and which in turn rested upon a ledge running along the side of the tunnel.   This ledge was about five feet high.   The plank, being placed over the iron pipe and its end under the flange, projected out towards the center of the tunnel and enabled the plaintiff to walk out upon it and to reach the top of the tube at its center.   The plaintiff admitted that this was a contrivance frequently used by the men at work in the tunnel for the sake of its convenience, but stated that he had never made use of it before.

The plaintiff, after putting the plank in place, stood upon it and tested it, to see that it would bear his weight, and then commenced working from that position.   Shortly afterwards the iron pipe on which the plank rested rolled from its place and the plank fell, throwing the plaintiff to the ground and causing the injuries of which he complains.   The iron pipe was usually fastened to the side of the tube by means of an iron strap, and the plaintiff testified that it would have been impossible for the pipe to have slipped under the use that was made of it, if it had been properly fastened.   The pipe was used for a light-pressure air line, and the defendant had nothing to do with its construction or maintenance.   It was covered with rubbish at the place where the plaintiff rested his plank upon it, and the plaintiff did not examine it, or remove the rubbish, except so far as necessary to put the plank in place.   The foreman testified that he never examined it to see that it was safe.   There was also testimony from which the jury might properly have found that the plank was placed in position by the plaintiff in the manner which had been previously indicated to him by the foreman.

Motions to dismiss the complaint were made at the close of the plaintiff's case and at the close of the whole case, and, the jury having found for the plaintiff, the defendant moved for a new trial upon the ground that the verdict was contrary to the evidence and against the weight of evidence. No exceptions having been taken to the charge to the jury, the question presented on this appeal is whether the motion for a new trial was properly denied. The jury having found for the plaintiff under a charge to which no exception was taken, their verdict ought not to be disturbed, unless there is either no evidence to sustain it or it is clearly against the weight of the evidence.

If the defendant corporation is liable at all, it must be because it is in some way chargeable with negligence. In what, then, does its negligence consist? The plaintiff says that the defendant was under the obligation to use reasonable care in providing a safe place for its employés to work and in furnishing them with safe and adequate appliances for that work; and this is undoubtedly true, and was an obligation which the defendant could not escape by any delegation of authority to a vice principal. In the present case, however, no claim is made that the tube or tunnel in which the work was done was an unsafe place. The only unsafe place of which complaint is made was the plank upon which the plaintiff was at the time of his fall. This was a place which the plaintiff had constructed for himself, and as to which the defendant could hardly owe him the duty of care, which it undoubtedly owed as to the premises themselves. It cannot affect the question that the platform was constructed by the plaintiff under the advice and in the manner suggested by the foreman. There is no suggestion that the foreman was not a competent servant, and, if so, the defendant was not liable either for his negligence or for his errors of judgment in a mere detail of the work in which he was engaged with the plaintiff. Russell v. Lehigh Valley R. R. Co., 188 N. Y. 344, 81 N. E. 122, 19 L. R. A. (N. S.) 344. There was thus no evidence that the defendant had been negligent in regard to furnishing a place for the plaintiff to work.

Was there any evidence, then, that the defendant had failed in its duty to use reasonable care in furnishing safe and adequate appliances for the plaintiff to work with? There was no fault found with any of the appliances actually furnished. The accident did not happen through any defect in the ladders supplied by the defendant for use in the work, and the plank furnished the plaintiff was, as he testified, a good plank and practically new. The negligence of the defendant, therefore, if it can be predicated upon anything in the record, must be based either upon the theory that the iron pipe, upon which the plank rested, was not properly fastened to the wall, or upon the theory that the defendant had not furnished adequate appliances, inasmuch as it had not furnished enough ladders for the work required to be done. The iron pipe was neither constructed by nor under the control of the defendant, and was constructed for use as a pipe to conduct air under a light pressure. So far as appears, it was perfectly safe for the use for which it was intended, and the accident did not occur through any normal use of the pipe. So far as it was a part

of the premises, it added no element of danger, and did not make the premises in any way unsafe. If the accident had occurred through a defect in the pipe, or in its attachment to the wall, while the pipe was in normal use, it may be that the defendant would have been liable for a failure to cause it and its fastenings to be inspected; but I do not think that the defendant was under any duty to cause the pipe to be examined for the purpose of ascertaining its fitness for a use for which it was obviously never intended, and which subjected it to a strong pressure and strain additional to that which its normal use would impose.

Concerning the supposed failure of the defendant to furnish ladders, it is to be noted in the first place that the evidence plainly showed that the plaintiff made no very serious effort to procure a ladder. He testified that he asked the foreman, "How about a ladder?" and that the foreman replied that "he didn't know if there was any around or not, but to go ahead up there and use a piece of plank." He further says:

"I looked around for a ladder, and could not find any. After I got outside, I looked up further, and couldn't find any, and I had to use a plank."

The following further testimony was also given by the plaintiff:

"Q. Did you look for ladders? A. I certainly did. Q. There were none other that were not in use? A. I couldn't find any that were not in use. Q. Did you attempt to find any in the tunnel? A. I certainly did. As I walked along in the tube I certainly looked. Q. Was there any other place that you were accustomed to apply for ladders? A. No, it was not; not without an order. Q. Did you receive an order for a ladder from Mr. Whitaker at that time? A. No, sir; I received no order. Q. Had there at any time previously on the job been a large quantity of ladders? A. Yes; off and on there were ladders, and the first thing you know they would be lost, or disappear, or break—altogether scattered. Q. Do you know of any particular time when the ladders were removed from the job? A. Yes; just a couple of days before that laborers had cleaned out the tube. Q. You know that just before that ladders had been removed from there? A. Yes; there certainly was."

From all this, I think it quite clearly appears that the plaintiff adopted the foreman's suggestion that he use a plank instead of a ladder, without by any means exhausting methods available to him of procuring a ladder. There were admittedly ladders there, although the plaintiff says they were in use at the time, and he did not attempt to procure the order which he referred to in his testimony. It surely cannot be held that the duty of the defendant to use reasonable care in furnishing adequate and proper appliances for the work can be so extended as to require it to have so many ladders on the premises that at all times one could be found, not in use, by any workman walking through the tunnel on his way to the place to which he had been assigned to work; and, as said by Judge Gray in Russell v. Lehigh Valley R. R. Co., supra (page 348 of 188 N. Y., page 123 of 81 N. E. [19 L. R. A. (N. S.) 344]):

"A jury's speculation upon the situation cannot be allowed to affect the question of the master's liability."

In all this I have taken no account of the testimony for the defense, but have sought to give the plaintiff the benefit of all inferences which

the jury could properly be allowed to draw from the testimony of the plaintiff himself, disregarding all conflicting testimony. I am forced to the conclusion that there is no evidence in the case sufficient to sustain a finding that the defendant was negligent, and that, as the verdict of the jury necessarily implies that finding, it ought not to be permitted to stand.

Counsel for the respondent say in their brief:

"The plaintiff had a right to rely upon the defendant having performed its duty. He had a right to assume, when the defendant ordered him to adjust a plank in a certain way at a specific place, that that place was safe, suitable, and proper. We respectfully point out to the court that the specific place and the specific way of adjusting the plank were selected by the master, and the servant, throughout the whole time immediately preceding the accident, simply carried out the orders of his superior."

This argument shows quite clearly the essential weakness of the plaintiff's case. The plaintiff is not suing the foreman for any negligence on his part; but he is suing the corporation, and he must show by sufficient evidence that the corporation failed in some duty it owed to the plaintiff. The defendant owed the duty of using reasonable care to furnish a safe place, and safe and suitable appliances, and it also owed the same care in selecting its other servants. Having selected a proper and competent foreman, however, it could leave the details of the work to the judgment of the foreman, and for his errors of judgment, or even for his negligence, the defendant was not liable. Russell v. Lehigh Valley R. R. Co., supra; Vogel v. American Bridge Co., 180 N. Y. 373, 73 N. E. 1, 70 L. R. A. 725. In the present case the defendant neither ordered the plaintiff to adjust the plank in a certain way nor selected the specific place in which it was to be adjusted. These were mere details of the work, and for the error or neglect of the foreman in their performance the defendant could not be held accountable.

The case of Pluckham v. American Bridge Co., 104 App. Div. 404, 93 N. Y. Supp. 748, affirmed 186 N. Y. 561, 79 N. E. 1114, has no application, because there the master failed in his initial obligation to furnish a safe and suitable appliance, which, as above shown, is not the case here.

The judgment should therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.