JOHN CONROY'S ADMX. *v.* HERMAN B. NELSON AND THOMAS H. NELSON.

May Term, 1912.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed October 7, 1912.

*Master and Servant—Injuries to Servant—Quarries—Safe Working Place—Duty of Master—Exception to General Rule—Master's Duty to Inspect Progress of Work and Warn of Dangers.*

The ordinary rule requiring a master to exercise due care to provide his servant a reasonably safe working place does not apply to a servant employed under a competent foreman, with competent fellow servants, supplied with suitable tools, appliances, and

material, to blast and remove slate from a quarry, wherein the conditions, dangers, and surroundings are changed by each succeeding blast, and directly result from his own acts and those of his fellow servants in the ordinary discharge of their duties.

In an action against a master for the death of a servant, it appeared that while deceased, together with competent fellow servants, under a competent foreman, and supplied with suitable tools, appliances, and material, was employed in blasting and removing slate from a quarry, in which work he was experienced, he was killed by the falling of a large projecting mass of slate that had shortly before been displaced by blasts that he had fired for the purpose of dislodging it, and beneath which he was still working in the line of his duty, but he was not warned, did not know, and from his position could not see, that the mass had been displaced, though the foreman, or any one else, by inspection at the top of the mass, might easily have seen the displacement and warned deceased. *Held*, that the master was not bound to protect the deceased by inspecting the progress of the work in which he was engaged, and warning him of the displacement and the resulting danger, which was one ordinarily incident to the performance of his duties; and that, if the foreman was negligent in those respects, his negligence was that of a fellow servant in connection with the details of the work, for which the master was not responsible.

CASE for negligence. Plea, the general issue. Trial by jury at the March Term, 1911, Rutland County, *Taylor*, J., presiding. Verdict directed for defendants, and judgment thereon. The plaintiff appealed. The opinion fully states the case.

*J. E. Sennett, P. M. Meldon* and *M. C. Webber* for the plaintiff.

It was the duty of defendants to protect the deceased by inspecting the progress of the work, observing the movement of the head of slate, and warning him when the danger became imminent. *Marshall* v. *Dalton Paper Mills*, 82 Vt. 489, 499; *Doyle* v. *Melendy*, 83 Vt. 339; *Severance* v. *New England Talc Co.*, 72 Vt. 181; *Houston* v. *Brush*, 66 Vt. 331; *Smith* v. *Hecla Mining Company*, 38 Wash. 454; *Union Pac. Ry. Co.* v. *Jarvi*, 3 C. C. A. 433, 53 Fed. 65; *Western Coal & Mining Co.* v. *Ingraham*, 17 C. C. A. 71; *Pantzar* v. *Tilly Foster Iron Mining Co.*, 99 N. Y.

368; *McGovern* v. *C. V. Ry. Co.,* 123 N. Y. 280; *Simone* v. *Kirk,* 173 N. Y. 7; *O'Brien* v. *Buffalo Furnace Co.,* 183 N. Y. 317; *Connolly* v. *Hall etc. Co.,* 192 N. Y. 182; *Henry* v. *Hudson & Man. R. R. Co.,* 201 N. Y. 140. In this matter the foreman was a vice principal. 26 Cyc. 1307, 1348-1349; *Carter* v. *Baldwin,* 107 Mo. App. 217; *Howard* v. *Railway Co.,* 26 Fed. 837; *Blanchard* v. *Vt. Shade Roller Co.,* 84 Vt. 442; *McKane* v. *Max,* 77 Vt. 7; *Alaska U. G. Co.* v. *Muset,* 114 Fed. 66; *Wellston Coat Co.* v. *Smith,* 65 Ohio St. 70, 87 Am. St. Rep. 547.

*T. W. Moloney* for the defendant.

WATSON, J.   At the close of the plaintiff's opening case a verdict was ordered in favor of the defendants on the ground that no breach of any legal duty owing by the defendants to the intestate was shown by the evidence. Was this error? is the sole question.

The controlling facts fairly and reasonably within the tendency of the evidence may be stated as follows: The defendants, operators of a quarry, were engaged in quarrying and removing slate rock from the pit of their quarry, and manufacturing the same into slate products. The butt of the quarry is on the east, and is a more or less perpendicular face of rock formed by cutting down into the slate veins from above, and removing the slate rock in a westerly direction therefrom. The sides of the quarry are at the north and the south. The pit was of varying depths, and the different elevations in the floor or bottom of the quarry are described as benches or shelves. The slate lies in veins, and is separated into more or less detached pieces by joints or seams. Each of these pieces of slate is known and spoken of as a head of slate, and is separated from another head back of it by a butt joint, also from another head on either side (may be), by a joint. Slate may be attached to rock on one or more sides so there is no joint. The heads of slate are often imbedded in streaks of poor rock, varying in width, running through good slate rock, called posts or pillars, which form a support to the heads of slate. The defendants' quarry is jointy. In quarrying one object is to get the heads of slate out free from the joints as nearly whole as possible. The pit of the quarry is divided into sections, known as inclines, and numbered 1, 2, 3, and 4, respectively, in their order from south to the north.

12

The defendants had a general foreman in charge of the work of quarrying and manufacturing slate at their quarry, who had charge and direction of the operations in the quarry pit and gave orders to the men in regard to the work of quarrying; and in each incline they had a gang of three men, consisting of a rockman and two helpers under him, engaged in quarrying slate rock. The intestate was the rockman of incline No. 3, and on the day of the accident he had three helpers, one of whom was there by order of the foreman to help the intestate in the work of blasting then to be done. The intestate's work as rockman was to get out heads of slate, break them into blocks of suitable size, and to send those fit for manufacturing purposes out of the quarry.

At incline No. 3, there was a head of slate projecting out from the butt of the quarry with a supporting pillar of rock underneath it. A day or two before the accident the foreman caused seven holes to be drilled in that incline. The intestate had nothing to do with the drilling of them, except that he helped to set up the drill. Five of these holes were underneath this projecting head of slate, three of which, eight feet deep, were in the bench of the incline close to the butt of the quarry and ran up and down; two, six feet deep, were in the roof, about ten feet lower down than the projecting head, but opening up toward it; and the other two, were lower down in the pit. The purpose and effect of the first five holes here mentioned were to blast out the rock underneath this head of slate, so the latter could be freed in the process of quarrying it. One witness of long experience in this kind of work said the general effect of blasting two holes underneath such a head of rock is to weaken the top so it will have to fall sooner or later.

In the forenoon of the day of the accident the foreman directed the intestate to fire the two holes lowest down in the pit, at the same time ordering the man who drilled the holes, he being an experienced quarryman, to help the intestate in so doing. After these holes were fired, the foreman went down into the quarry to see the blast, and then told the intestate to fire the other five holes, which he did, all five going off together. On giving the last order and before the blast, the foreman went out of the quarry and was not in it again before the accident. In cleaning up the rock thus blasted out, the intestate found a crack some two inches wide about a foot below the roof holes,

extending down to the bench.  Later, when out of the quarry for dinner, he told the foreman about it, and was told by the latter that if there was a place for powder he better put it in. On returning to the pit, the intestate put powder in the crack and fired it.  Then he noticed a small stone, weighing about fifty pounds, over where he and his helper were at work, and right under the projecting head of slate.  Saying it might fall and kill some one, the intestate, using a crowbar lengthened out by a piece of iron pipe, for that purpose, punched the small stone, and around it, until it fell, followed within a few seconds by the big overhanging rock's tipping out and coming down upon him, producing fatal injuries.  The big rock was in length, north and south, from twenty to twenty-five feet, and in weight, from twelve to fifteen tons.  Before tipping, it had an overhang of ten feet.  The intestate's helper had not before seen anything that was loosened there except the small stone, and for the purpose of the question before us, it may reasonably be inferred from the evidence that the intestate had not.  The latter had had twenty or more years of experience working in slate quarries in that vicinity, five or six of which years were in this same quarry, and for the last year or year and a half he was, as at the time of his death, a rockman there, and as such loaded the holes and did the blasting in No. 3 incline.  On the day of his injury he received no instructions from the foreman to look out for the overhanging rock, nor was anything said to him by the latter as to whether that rock was dangerous.

This rock was moved out enough from its natural bed by the blast of the five holes so that the crack caused thereby in the butt was visible from the top of the bank of the quarry before noon; but this crack could not be seen from where the intestate and his helper were working in the pit, and they had no knowledge or information concerning it, nor that the rock had thus moved before it fell.  Nor, so far as the case shows, did the foreman know or have notice that the position of the rock had in any way changed before the accident, though an examination would have disclosed that fact.  Subsequent to his leaving the quarry in the forenoon as before stated, he did not make any inspection of the head of slate or its surroundings, to ascertain the conditions as the work progressed.

The contention of the plaintiff is, as it was in the court below, that the defendants were negligent (1) in not providing

the intestate with a safe place in which to work; and (2) in not protecting him from the threatened danger by inspecting the progress of the rock, observing the movement of the head of slate and warning him when the danger became imminent.

Respecting the first ground of this contention, the work the intestate was doing at the time in question was along the line of the ordinary duties of his employment. The getting out of this head of slate rock was the purpose and object of the blasting done to take away its supporting rock underneath, and the roof holes fired were well calculated to cause it to fall. We think the intestate and his fellow workmen were practically making their own working place as an incident to the quarrying being done. Every succeeding blast effected a change in the conditions and surroundings, and the dangers to which they were exposed were the direct result of their own operations. In such circumstances the ordinary rule requiring the master to furnish the servant a safe place in which to perform the duties of his employment does not apply. *Petaja* v. *Aurora Iron Min. Co.,* 106 Mich. 463, 58 Am. St. Rep. 505; *Mielke* v. *Chicago & Northwestern Ry. Co.,* 103 Wis. 1, 74 Am. St. Rep. 834; *Coal and Min. Co.* v. *Clay,* 51 Ohio St. 542; *Perry* v. *Rogers,* 157 N. Y. 251; *Capasso* v. *Woolfolk,* 163 N. Y. 472; *Di Vito* v. *Crage,* 165 N. Y. 378; *Russell* v. *Lehigh Valley R. R. Co.,* 188 N. Y. 344, 81 N. E. 122, 19 L. R. A. (N. S.) 344; *McGinty* v. *Athol Reservoir Co.,* 155 Mass. 183; *Fraser* v. *Red River Lumber Co.,* 45 Minn. 235; *Montgomery* v. *Robertson,* 229 Ill. 466, 82 N. E. 396; *Thurman* v. *Pittsburg & Montana Copper Co.,* 41 Mont. 141, 108 Pac. 588; *Jacoby Co.* v. *Williams,* 110 Va. 55, 65 S. E. 491; *Heald* v. *Wallace,* (Tenn.) 71 S. W. 80; *Oleson* v. *Maple Grove Coal & Min. Co.,* (Iowa) 87 N. W. 736; *Finalyson* v. *Utica Mining and Milling Co.,* 14 C. C. A. 492, 67 Fed. 507.

Taking up the second ground of the plaintiff's contention, Were the defendants in duty bound by law to protect the intestate by inspecting the progress of the work in which he was engaged, and warning him against impending ordinary dangers incident to the performance of his duties? Certainly the dangers naturally attending the details of the work as it progressed in the process of accomplishing the object sought cannot be classed otherwise than of this character. The blasting effected its purpose, nothing more. According to the evidence, the consequential result was inevitable, namely, the projecting rock must fall

sooner or later, as it in fact did.  So far as the evidence shows, the injury to the intestate was the only thing that occurred undesigned.  The evidence had no tendency to show, and it is not claimed, that the defendants' foreman or co-employees were incompetent, nor that they did not provide suitable tools, appliances, and material, considering the character and purpose of the work in which the intestate and his fellow workmen were engaged.  When the defendants had employed a competent foreman and competent co-employees, and had provided suitable tools, appliances, and material, according to the nature of the work, they had answered the requirements of the law in this respect, and if the foreman was negligent in not discovering, during the progress of the work, that, as the result of the blast of the five holes, the head of slate was somewhat moved out from its natural bed, and in not warning the intestate against the impending danger, the negligence was that of a fellow servant in connection with the details of the work, for which the employers are not in law responsible.  For this holding the case of *Brown* v. *People's Gas Light Co.,* 81 Vt. 477, 71 Atl. 204, 22 L. R. A. (N. S.) 738, is full authority.  There, the plaintiff was a shoveller engaged in a ditch that had been excavated to the depth of five or six feet, in width eighteen or twenty inches at the bottom and somewhat more at the top, in which pipe was to be laid.  The competency of the foreman there in charge was not questioned. The plaintiff was directed by the foreman to go into the ditch and dig out a bell hole, and to hurry about it so the joint could be calked before night.  The banks of the ditch were not shored up, though the defendant supplied planking and bracing timbers to protect dangerous places, if any occurred.  While the plaintiff was thus in the ditch, one bank caved on to him, causing the injuries for which he sought to recover.  After he went into the ditch and before the bank caved, a crack appeared in the dirt thrown out on that side, running parallel with the ditch.  The foreman's attention was called to this crack, but he did not warn the plaintiff concerning it, and the latter did not know of its existence.  The bank caved along the crack.  It was urged that the foreman's knowledge of the crack, and the plaintiff's ignorance of it, were sufficient to entitle the plaintiff to recover, on the ground that it became the master's duty to warn the servant of a danger known to him but unknown to the servant. Holding otherwise, the Court said: ''The danger was not in a

legal sense, latent. The crack was not so much the source of the danger as it was the manifestation of it. But in any view, it was in character obvious, though unseen by the plaintiff. The duty to warn is coextensive with the duty to exercise care. If it was the duty of the master to protect the plaintiff from the danger which threatened, it was his duty to warn him of the imminence of the danger indicated by the crack; otherwise not. * * * However great the moral obligation resting on the foreman to warn the plaintiff, his fellow laborer, he did not, in his neglect to do so, represent the defendant,—for the master's duty had been fully performed. The omission of the foreman in this behalf, like his omission to make use of the shoring, was his own, and not that of the master,—an omission which comes within the fellow servant rule." To the same effect are cases: *Russell* v. *Lehigh Valley R. R. Co.*, 188 N. Y. 344; *Capasso* v. *Woolfolk*, 163 N. Y. 472; *Di Vito* v. *Crage*, 165 N. Y. 378; *Perry* v. *Rogers*, 157 N. Y. 251.

*Judgment affirmed.*