## LOUIS ATZ, ADMINISTRATOR, v. THE NEWARK LIME AND CEMENT MANUFACTURING COMPANY.

1. When the duty which a master owes to a servant respecting machines furnished for the servant to work with requires inspection of the machines, the duty will be performed by such an inspection as ordinary prudence would dictate.

2. A master is not liable for an injury occasioned by a defect which would not have been disclosed by such an inspection as it was his duty to make.

3. Such inspection would require the use of practicable tests known to the master or so commonly used for that purpose that he might be presumed to have knowledge of them.

---

On rule to show cause.

Plaintiff's intestate was in the employ of the defendant, a company engaged in the manufacture of cement.

On May 5th, 1892, defendant was using a machine for grinding broken rock called the Page mill. The mill had an upper stone which was fixed in a frame of hard wood, and a lower stone which revolved. The upper stone had a hole of about five inches in diameter in the centre, through which the rock to be ground was fed from a hopper. In that hole was the "damsel," inserted in the lower wheel and which, when the latter revolved, oscillated the trough leading from the hopper so as to produce a constant feed of rock. The frame in which the upper stone was fixed was hinged on one side upon a frame surrounding the lower stone. On the opposite side an iron lag-bolt was inserted having a ring attached. At intervals the grinding surfaces of the two stones required to be sharpened. To expose them for that purpose there was a traveling-block and pulleys over the mill, carrying a chain with a hook. When the hook was inserted in the ring the frame with the upper stone in it was raised by the use of the pulleys to a perpendicular and then lowered on the other side, leaving both grinding faces exposed. When sharpened the operation was reversed and the frame with the upper stone was let down upon the lower stone.

On the day named deceased and another workman were engaged in lowering the upper stone after sharpening, the latter managing the pulleys. When the frame was nearly in place deceased directed the other workman to stop lowering, which he did. Thereupon the lag-bolt broke and the upper stone fell. Deceased had one arm and part of his head between the stones and was instantly killed.

The administrator of deceased brought this action to recover for the pecuniary loss to the next of kin and obtained a verdict. This rule to show cause was allowed.

Argued at February Term, 1896, before BEASLEY, CHIEF JUSTICE, and Justices DIXON, MAGIE and GARRISON.

For the rule, *Robert H. McCarter.*

*Contra, Samuel Kalisch.*

The opinion of the court was delivered by

MAGIE, J. The first question presented by this case is whether the evidence established any liability on the part of the defendant for the death of plaintiff's intestate.

As the death was occasioned by the breaking of a machine furnished by defendant as employer to deceased as its servant to be used in its work, it is conceded that defendant's liability will only be established by sufficient proof of its breach of the duty which it owed deceased in respect to that machine.

The rule of duty imposed on a master in this regard has so lately been enunciated in this court that it is only necessary to repeat so much of it as is applicable to this case. It is that the master must take reasonable care to have and preserve such a machine reasonably safe for the work which the servant is employed to do with it. The master does not insure the safety of the machine nor is he bound to extraordinary or the highest diligence respecting it, but only to use such reasonable precautions as a man of ordinary prudence would use for the safety of himself and his workmen under the circumstances. If such prudence required inspection, the inspection must be such as ordinary prudence would dictate, but the master will not be liable for an injury occasioned by a defect, the existence of which would not have been disclosed by such inspection as he was required to make. *Electric Company* v. *Kelly,* 28 *Vroom* 100.

At the trial plaintiff claimed that defendant had failed to perform its duty in that it had not properly inspected the machine.

The fall of the upper millstone upon deceased was occasioned by the breaking of the lag-bolt at a point one-half or three-quarters of an inch within the wood of the frame in which it was firmly screwed. All the witnesses concur in attributing the break to an internal flaw in the iron of which the bolt was composed, which was visible in the interior of the bolt at the point of fracture, but which could not have been seen from its outside, even if it had been removed from the wood for inspection. The defect was obviously latent.

The machine in question had been purchased by defendant some eight years before of reputable manufacturers of Page mills. Many such mills were then and have since been in use by manufacturers like defendant. It had been procured for use in emergencies, when from accident, need of repairs, &c., other mills of defendant could not be used. Although owned by defendant for eight years, it had been in use not more than five months in all.

When purchased and set up in defendant's factory it was examined by defendant's boss miller, under the direction of one of its superintendents. This examination included an observation of so much of the lag-bolt as was visible.

After each employment of the machine it was again examined in a like mode, and put in condition for use when an emergency might require it.

The contention at the trial was that these inspections (the making of which was not disputed) were inadequate and insufficient, and that the defect in the lag-bolt, though latent, could have been discovered by the use of one of two tests which it was the defendant's duty to employ.

One of these tests was the subjection of the bolt to a strain either by the use of a wrench or by loading the upper stone, when suspended by the chain, with a heavier weight, or the subjection of the bolt to similar strain after removing it from the wood for that purpose. This claim raised the question of the duty of a master, in respect to tools and machines purchased of regular dealers in such articles, as reasonably fit for the use for which they were manufactured. But that question is not here for review, because the trial judge declared that such a test was an extraordinary one which defendant was not required to make, and excluded this claim from the consideration of the jury.

The other test proposed, as one which defendant ought to have employed, was that of sound. Two persons having some experience in regard to iron testified that if the lag-bolt, when screwed in the frame as it was when it broke, had been tapped by them with a hammer, the sound would have indicated to them the existence of the hidden flaw in its interior.

This contention was submitted to the jury, and they were allowed to determine whether, by not making that test, the defendant failed to exercise reasonable care for the safety of this mill.

The verdict of the jury upon this contention cannot be supported. A great number of witnesses of equal or greater experience testified that the rap of a hammer on a bolt tightly enclosed in hard wood, would be incapable of exciting vibrations that would disclose an interior flaw. The overwhelming weight of evidence was that such a test was impracticable.

But, in my judgment, the liability of defendant ought not to have thus been submitted to the jury. The master's duty of reasonable care requires him, if inspection is necessary, to make such inspection as ordinary prudence required. This would involve the use of such tests and devices as are known to the master, or are so commonly employed in such inspections that the master might reasonably be deemed to have knowledge of them. *L. & N. R. Co.* v. *Allen's Administrator*, 78 *Ala.* 494.

Plaintiff's experts did not pretend that the test was commonly employed or that it could be used with success by any others than themselves. There was no evidence that defendant's officers knew of the delicacy of ear possessed by these witnesses. The other expert witnesses united in testifying not only that the test was impracticable, but that it was never employed.

To submit the question to the jury under this evidence permitted them to charge the master with the duty of extraordinary diligence, instead of reasonable care and ordinary diligence.

Therefore, the rule to show cause must be made absolute.