DANIEL McGRATH, PLAINTIFF IN ERROR, v. THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY, DEFENDANT IN ERROR.

Argued March 6, 1903—Decided June 15, 1903.

With respect to the condition of implements furnished to his servants, a master must make such inspection as ordinary prudence requires, including the use of such tests as are known to him to be called for, or as are so commonly employed in such inspections that he might reasonably be deemed to have known of them.

---

On error to the Supreme Court.

For the plaintiff in error, *Warren Dixon.*

For the defendant in error, *Bedle, Edwards & Lawrence.*

The opinion of the court was delivered by

GARRISON, J.  This case was tried originally in the Court of Common Pleas of Hudson county, where the plaintiff recovered a verdict for damages for personal injuries.  Upon a writ of error taken to the Supreme Court the judgment of the Common Pleas was reversed and set aside.  From this judgment of the Supreme Court the present writ of error was taken.

The opinion of Chief Justice Gummere, delivered in the Supreme Court (39 *Vroom* 425), fully states the facts upon which the legal questions in the case arise. We concur with the view expressed in that opinion that the defective condition of the coal car was the occasion only of the injury to the plaintiff and not a proximate cause of it. The proximate cause was the condition of the wooden tool, called a "sprag," which caused it to break in the hands of the plaintiff. In the opinion cited, conclusive effect was given to the statement of one of the plaintiff's witnesses that the defective condition of the sprag could have been readily detected by a casual examination of it; and proceeding from this premise, the conclusion reached was that the plaintiff himself was guilty of negligence in failing to observe what a casual observation would have discovered. We think that this conclusion gave, perhaps, undue weight to the expression of the plaintiff's witness to the exclusion of inferences more favorable to the plaintiff that might have been drawn by the jury from other parts of the testimony. It is not clear that the defective condition of the wooden tool in question might not have escaped such observation as was incident to the use of it by the servant, and yet have been detected by the master, either in the course of its manufacture or by the exercise of reasonable care in its inspection before placing it in the hands of the servant. The case has, therefore, been examined with regard to the duty of the master in these respects.

The implement, called a "sprag," is shown by the testimony to be a triangular block of wood two inches wide, five inches at its base and with a perpendicular of about twelve inches, representing, therefore, less than half a cubic foot of wood exposed to observation upon five of its aspects. If any of these aspects presented to the observer evidences of rottenness, the rule as to master and servant is the same, and in such case, as was held in the court below, the servant could not recover from the master. To entitle the servant to such recovery the defect must have been at once hidden from ordinary observation and yet detectable by such ordinary inspection or tests as the master was bound to use. This raises the

legal question in the case, namely, What was the duty of the master in these respects? Since the rendition of the opinion in *Atz* v. *The Manufacturing Co.,* 30 *Vroom* 41, the rule therein laid down by Mr. Justice Magie has been accepted, namely, that with respect to the condition of implements furnished to servants, a master must make such inspection as ordinary prudence required, involving the use of such tests as are known to him to be called for, or as are so commonly employed in such inspections that he might reasonably be deemed to have known of them.

Applying this rule to the case in hand, the question is whether any tests were omitted by the master which he knew to be called for, or ought to have known. One only is suggested, namely, what is called the "hammer test," which is described in the testimony as "sounding, which is a usual method of testing to find out whether a piece of wood is solid to the core when it appears to be solid on the outside." The concrete question, however, is whether this method is shown by the testimony to have been in ordinary use with respect to small blocks of wood, such as was the sprag in question. The testimony is silent upon this point, and it may well be that where the core of a piece of timber is at a distance from its exposed surface, a different rule would obtain from that which would be reasonable when, in the process of manufacture, the wood had been reduced to a block containing a few cubic inches. In its bearing upon the master's duty, it is immaterial whether the intimate structure of a given piece of wood is disclosed as the result of a test or as a necessary step in the process of manufacture. In either case the required disclosure is obtained. If, in the present case, the master, for the sole object of a test, had caused the block to be sawed in five separate dimensions—*i. e.,* with the grain, across the grain and obliquely, besides two lateral cuts but two inches apart— without disclosing any defect, it could scarcely be said that he had not used ordinary care to acquaint himself with the structure of the material he was using. This, however, was just what was done in the making of the sprag, according to the testimony. Giving, therefore, to the abstract testimony

in the case its fullest import, it entirely fails to show that, in respect to the subject-matter of this suit, the master either failed to use ordinary care, or that he neglected any reasonable test of whose existence he either knew or ought to have known.

Upon this ground, and not upon the ground of the contributory negligence of the plaintiff, the judgment rendered in the Supreme Court is affirmed.

DIXON, J. (dissenting). The opinion of the court in this case rests upon an assumption which, I think, is unwarranted, that the exposed surfaces of the sprag presented no indications of unsoundness. The fact that the sprag was unsound, as shown by the rottenness of the wood fibers when examined after the accident, was proved and scarcely disputed at the trial, and the opinion before mentioned demonstrates the great probability, if not the certainty, that such unsoundness would be disclosed by the various sections to which the material had been subjected in making the sprag. This being so, two questions remained—*first*, whether it could reasonably be decided that the maker of the sprag, who was the *alter ego* of the defendant and a worker in wood, would have perceived the defect and discarded the material, if he had exercised due care in the process of manufacture and a due regard for the safety of those who were to use the sprag, and *second*, whether it could reasonably be decided that the defect might have escaped the observation of the plaintiff, even though he exercised due care in using the sprag—considering on the one hand the ample opportunity for examination afforded to the manufacturer, and the high degree of care required of him in view of the serious danger incurred by the use of a rotten sprag, and, on the other hand, the right of the user to presume that sound material had been employed, and the slight opportunity for observation afforded to him as he picks up the sprag to stop an advancing car. I think it was lawful to submit each of these questions to the jury, and that the jury had legal right to decide both of them in favor of the plaintiff.

*For affirmance*—THE CHANCELLOR, GARRISON, HENDRICK-SON, PITNEY, SWAYZE, VREDENBURGH, VOORHEES. 7.

*For reversal*—DIXON, BOGERT, VROOM. 3.