EMIL BAUMAN v. JOHN E. COWDIN AND OTHERS.

Argued February 26, 1907—Decided June 10, 1907.

1. The duty of a master to his servant to exercise reasonable care is performed when he provides an apparatus in common use, purchased from a reputable and experienced manufacturer, and makes a test where a test is required.

2. Whether the obligation of the master requires him to test, imme-
diately after its installation, an apparatus in common use, in-
stalled by a reputable manufacturer under an independent con-
tract, depends upon the circumstances of the case and the terms
of the contract.

3. The master is not liable when an accident happens to the servant
on the first occasion when the apparatus is used if the method of
use is the same method as would be required to make a proper
test.

On error to Passaic Circuit.

Before Justices GARRISON, SWAYZE and TRENCHARD.

For the plaintiff, defendant in error, *Michael Dunn.*

For the defendants, plaintiffs in error, *Sherrerd Depue.*

The opinion of the court was delivered by

SWAYZE, J.   The plaintiff, while employed by defendants
as fireman in the boiler-room of their mill, was injured by the
explosion of a new boiler cleaner.   The cleaner was of a type
in common use, and had been put in just prior to the explo-
sion by the Manchester Manufacturing Company, a reputable
and experienced manufacturer, under a contract which pro-
vided that the Manchester company should attach the cleaner
to the boiler.   The work of attachment was completed Satur-
day afternoon, and fire was started under the boiler Sunday
night.   About seven o'clock Monday morning the plaintiff
was ordered by the engineer to open the valves on the pipes
which connected the cleaner with the boiler.   One of the
valves leaked and the engineer ordered the plaintiff to tighten
up the nuts on the valve to stop the leak.   While he was en-
gaged in this work the accident happened.

It is a little difficult to tell exactly on what the plaintiff
relies.   It is said that the boiler cleaner remained on the floor
of the boiler-room several days before it was put up; that the
valves were improperly located, and in particular that there
should have been a stop-valve at the boiler so that the cleaner
might be tested with a greater assurance of safety; that there

was a structural defect in the cleaner, either because the top was of defective iron or because the bolts holding the cap on were too tight and did not allow for the difference in expansibility; that the cleaner was improperly connected with the boiler; that no test was made by the defendants before the plaintiff was set to work, and that the steam pressure was let into the boiler too rapidly.

Many of these charges of negligence can be readily disposed of. The explosion was not caused by the fact that the cleaner remained on the floor of the boiler-room several days before it was put up; if there was any deterioration in the cleaner during that time it had no connection with the injury to the plaintiff. Nor was that injury due in any way to the location of the stop-valve; the possibility that the plaintiff might have been a few feet further from the cleaner, and perchance have escaped injury, does not make the defendants liable. The structural defects in the cleaner, which seem to have been the real cause of the explosion, if attributable to negligence, were due to the negligence of the Manchester Manufacturing Company on whose experience and reputation the defendants had the right to rely. *Atz* v. *Manufacturing Company,* 30 *Vroom* 41; *Carlson* v. *Phenix Bridge Co.,* 132 *N. Y.* 273.

The master's duty is to exercise reasonable care only, and that care is exercised when he provides an apparatus in common use purchased from a reputable and experienced manufacturer and makes a test where a test is required, since that is the ordinary course of prudent men. *Reynolds* v. *Merchants' Woolen Co.,* 168 *Mass.* 501, where the cases are collected. If the cleaner was improperly connected with the boiler, of which there seems to be no evidence, that also was the fault of the Manchester company, an independent contractor. The fact that the actual work of connecting was done by a plumber in the employ of defendants does not alter the case; he may have been *pro hac vice* the servant of the Manchester company. *Delaware, Lackawanna and Western Railroad Co.* v. *Hardy,* 30 *Vroom* 35; *affirmed, Id.* 562; and in the absence of proof that the contract be-

tween the defendants and that company had been altered, we must assume that any work done in performance of the contract was done for the latter. Upon this subject we should suppose that the evidence as to an allowance for his work upon the contract price was relevant, but as no exception was taken to the refusal to admit it, we cannot review that ruling now. It is, however, unnecessary to dwell further upon this subject since the accident was not caused by any impropriety in the method of connecting the cleaner and the boiler.

The only question in the case which requires much discussion grows out of the alleged failure to make a proper test of the cleaner before setting the plaintiff to work. We dismiss the suggestion of the defendants that this failure was known to the plaintiff and that he therefore assumed the risk. It is true that he testified no test had been made, but this can only mean that, as far as he knew at the time of trial, there had been no test. This is not quite the same as positive proof that he had knowledge at the time of the accident of the want of a test and the danger.

The obligation of the master to test and inspect machinery at proper intervals is so well settled that no citation of authority is necessary. Whether this obligation requires him to test immediately after its installation apparatus installed by a reputable manufacturer under an independent contract depends upon the circumstances of each case and the terms of the contract. It is not, however, presented by the present case. Assuming that such is the master's duty, the evidence on the part of the plaintiff is that such a test could only be properly made by heating the cleaner and introducing steam. One of the plaintiff's witnesses testified that no mere pressure test, whether by air or water pressure, would be a safe test of an apparatus which was to contain steam and become heated by steam under high pressure. The defendants' brief says: "All the experts on the part of the plaintiff and all the witnesses on the part of the defendants who had any knowledge on the subject, admitted that the steam-heat test was the proper and well-known test to use to determine whether or not this appliance was safe and fit to use in the mill." The

only other test suggested—the hammer test—was actually used, and it is not suggested that it was inefficient as far as it went. We assume that the plaintiff's view is correct. If so, there seems to be an insuperable obstacle in the way of his recovery, for the explosion was caused by the introduction of steam heat into the cleaner. It would be quite illogical to find the defendants negligent for doing the very thing which, upon the plaintiff's contention, they were obliged to do in the performance of their duty to him. It is not to the point that the plaintiff did not know they were making a test; they were under no obligation to tell him their object in introducing steam into the cleaner. Nor is it of any significance, if it be the fact, that the introduction of steam was with a view to the actual operation of the cleaner and not to a trial test. The first time steam was introduced answered all the purposes of a test; if the cleaner proved defective its use would be stopped; if it withstood the test, there was no reason why it should not be used continuously for the purpose for which it was intended if a continuous use was necessary. Nor can the plaintiff complain because he was the employe who helped start the working of the apparatus. The defendants had the right to start it through some of their employes, and there is no suggestion that the work was not properly within the plaintiff's line of duty.

The plaintiff's statement of the master's duty defeats his action, unless there was some impropriety in the method of making the test. It is urged that the cleaner was heated and the steam introduced too rapidly, and there is evidence that proper care required that the process should be a slow one. The difficulty in the plaintiff's way upon this view is that there is nothing to show that the heating of the cleaner and the introduction of steam in the manner in which these things were done would have resulted in an explosion if the cleaner itself had not been structurally defective. The fact seems to be quite clear that the injury happened from this structural defect, and for such a defect the master is not liable.

The motion to nonsuit should have prevailed, and the judgment must be reversed.