EDMOND ARCHER *vs.* EDWARD H. ELDREDGE & another, trustees.

Suffolk.    December 6, 1909. — January 7, 1910.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Negligence,* Employer's liability. *Practice, Civil,* Order for judgment. *Supreme Judicial Court.*

At the trial of an action against the owner of a hotel by one employed there to run elevators and to do anything the engineer asked of him, to recover for personal injuries received by the plaintiff while he was assisting the engineer to repair an elevator, there was uncontradicted testimony of the plaintiff that on several occasions before the accident the elevator on which he was injured had shown indications that it was out of repair as to the apparatus which started and stopped it, that the engineer repeatedly had repaired it, that finally, the elevator having stopped between two floors, the engineer found a screw loose in the dog on the cable, which was a part of the device for stopping the elevator, and asked the plaintiff to come up on the top of the elevator car to assist him by holding the dog while he made fast the screw. The plaintiff asked, "Is it all right for me to get up there?" The engineer replied, "Yes, it is all right." As soon as the plaintiff stepped upon the top of the car, it shot upward and the plaintiff was injured. There was no evidence that the engineer was a superintendent within the meaning of R. L. c. 106, § 71, cl. 2. *Held,* that, since the plaintiff knew that the stopping and starting gear was out of repair and undertook to assist in the repair of it, he assumed the risk of injury due to the defect which he was helping to repair; and *held, also,* that the assurance of safety given to the plaintiff by the engineer was only a remark by one fellow servant to another, for which the defendant was not liable.

If an employee, while at work within the scope of his employment, is injured by a defective condition of machinery which it was the duty of his employer to keep in repair, or if, while he is engaged in repairing defective machinery, he is injured by reason of a defect disconnected with that which he is repairing, he is entitled to recover from his employer; but, if his injury is caused, while he is repairing the machinery, by the very defective condition which he has undertaken to repair, he cannot recover either at the common law or under R. L. c. 106, § 71, because he assumed the risk of such an injury.

The power conferred upon the Supreme Judicial Court by St. 1909, c. 236, § 1, to direct a trial court to enter judgment for the defendant, where, after a verdict

for the plaintiff, an exception by the defendant to a refusal by the trial judge of a request to order a verdict for the defendant has been sustained, will not be exercised where it does not appear that the real issues in the case were fully tried.

TORT for personal injuries received by the plaintiff while in the employ of the defendants at the Hotel Bristol in Boston, as stated in the opinion.   Writ dated August 1, 1904.

The case was tried before *Bond*, J.   The material facts shown by the evidence are stated in the opinion.   At the close of the evidence the defendants asked that a verdict for them be ordered.   The presiding judge refused to do so, and the defendants excepted.

The defendants also excepted to the following portion of the charge to the jury :

" Now, as was stated to you by counsel for the plaintiff, where an article, an implement or a machine, is being used as it was intended to be used, and it does not act as it was intended to act — that is, it does not operate as it was intended to operate — and a person is injured thereby, the fact that it operates in that way, the fact that it fails to do as it was intended to do, is some evidence that it was out of condition — that it was in a defective condition, and that is some evidence of negligence on the part of those who have control of it — charge of it, to keep it in repair."

There was a verdict for the plaintiff ; and the defendants alleged exceptions.

*J. Lowell*, (*J. A. Lowell* with him,) for the defendants.

*G. R. Swasey* (*F. R. Mullin* with him,) for the plaintiff.

RUGG, J.   This is an action of tort for personal injuries. The plaintiff was employed by the defendants.   His duties were chiefly those of running two elevators alternately, but he testified that he was also to do anything the engineer asked him to do, and always to notify the engineer, one Wright, whenever the elevators got out of repair.

There was evidence that on one or more occasions before the accident the elevator could not be stopped just at the level of the several floors and that it had started without the use of the shipper rope and that on the day of the accident it stopped once two feet above the floor and was repaired by Wright and that

about three hours later it stopped between two floors but was started again. Wright then went on the top of the elevator and found a screw loose in the dog on the cable, which was a part of the device for stopping the elevator. He then asked the plaintiff to come on top of the elevator with him and hold the dog, while he made fast the screw. The plaintiff asked, "Is it all right for me to get up there," to which Wright replied, "Yes, it is all right." As soon as the plaintiff stepped on top of the elevator, "it shot right up to the roof of the house" and the plaintiff was injured. This was in substance the testimony of the plaintiff and was uncontradicted as to the way in which the accident occurred.

The declaration contained counts at common law and under the employers' liability act. There was no evidence that Wright was a superintendent within the meaning of that act.

If the plaintiff had been injured while the elevator was being operated in the ordinary way and for the usual purpose, it is plain that he should have been permitted to go to the jury. The starting of the elevator might have been attributed to the negligence of the defendants. *Finnegan* v. *Winslow Skate Manuf. Co.* 189 Mass. 580. *Ryan* v. *Fall River Iron Works*, 200 Mass. 188. The same principle would govern, if while repairs had been in progress upon the elevator, it had started by means of some part of the mechanism quite disconnected with that undergoing repair.

The facts in the present case require the application of a different principle. The part of the elevator, which was out of repair, was that by which its starting and stopping were controlled. This was well known to the plaintiff. All machinery in constant use is liable to get out of repair. When this happens, it is the duty of the owner to see that it is put in proper condition. Although that is a personal duty resting upon the proprietor from which he cannot relieve himself by delegating it to competent employees, yet it must often be done through the agency of others. Obviously the owner cannot furnish, to those employed to make repairs, a machine or apparatus in reasonably perfect condition, for it has become unsafe and he is performing his duty by trying to get it repaired. When an injury is caused by the defective condition, which employees in the line of their duty are working to remedy and which they

know about or have means of discovering as well as the employer and there is no failure on his part to disclose superior knowledge if he has any, then there can be no recovery either at common law or under the statute. The cause of the failure of a device to work properly may often be obscure. If the employee undertakes investigation and repair, commonly he has means of knowledge equal to those of the employer or his superintendent. The master performs his duty if he discloses his knowledge touching the nature of the defect and puts upon the servant the obligation of discovering the cause or remedying the danger. Such a risk is not one as to which any duty rests upon the employer. Whatever gets out of repair must be made whole. Whoever undertakes this work either in a principal or in a subordinate capacity assumes the risk incident to it. He may not appreciate or apprehend the precise manifestation of peril which the accident may disclose, but he knows that danger, latent as well as manifest, may lurk behind the faulty condition. Injury arising out of such circumstances is one of the ordinary risks of the employment, for which no liability arises, and which the employee assumes by his contract of service. The obligation of the master to provide a safe place, in which his servants may work, and machinery in good repair, is discharged in such case, if there is no defect outside that which is pointed out for repair. It is like employment in tearing down a building, or performing other well known dangerous service, where the risks growing out of the work are assumed by the laborer by his contract to do the work. *Boisvert* v. *Ward*, 199 Mass. 594.

It was a part of the plaintiff's contract of service to render to the engineer whatever aid he required, to report to him any trouble about the elevator, and it was a part of the engineer's duty to repair the elevator. The plaintiff had as complete knowledge as anybody about the dangerous working of the elevator. There was no delay in undertaking to make the repairs. He knew that Wright was endeavoring to repair it and when his assistance to this end was asked, he voluntarily gave it. Under these circumstances a verdict should have been directed for the defendants. *Kanz* v. *Page*, 168 Mass. 217. *O'Keefe* v. *John P. Squire Co.* 188 Mass. 210. *Reed* v. *Moore & McFerrin*, 153 Fed. Rep. 358.

The assurance of safety by Wright just before the plaintiff went on top of the elevator was only the remark of one fellow servant to another, for which no liability attached to the defendants. *Whittaker* v. *Bent,* 167 Mass. 588. *Kalleck* v. *Deering,* 161 Mass. 469. *Moody* v. *Hamilton Manuf. Co.* 159 Mass. 70.

The portion of the charge to which exception was taken, although a correct statement of the law as to *res ipsa loquitur* in the abstract, was in large part inapplicable to the facts disclosed at the trial.

The case from the full statement of the evidence and the portions of the charge reported does not seem to have been tried along the lines we have indicated as the controlling legal principles, and therefore does not call for the application of St. 1909, c. 236, as to a direction for the entry of judgment in favor of the defendants. The rights of the parties can be better ascertained and protected by a new trial. The power conferred by this statute will ordinarily be exercised only when it is apparent that the real issues have been fully tried, or the merits of the case are plain.

*Exceptions sustained.*