JOSEPH BARRETT, DEFENDANT IN ERROR, v. JOSEPH W. YOUNG, PLAINTIFF IN ERROR.

Argued November 19, 1909—Decided February 28, 1910.

1. In an action brought by an employe for injuries sustained by the breaking of a dog, with which device a coal wagon was equipped, where the testimony shows that the wagon was some six years

old, that the device was the best in the market, that the wagon had been repaired and inspected some three months before the accident, that the person in charge of the coal business for the master had personally inspected the dog, that it appeared after an examination made after the accident that there was no flaw in the device, it is error not to direct a verdict in favor of the master.

2. A master is required to make only such inspection as ordinary prudence would dictate, and he is not liable for injuries occasioned by a defect, the existence of which would not have been disclosed by such inspection.

On error to the Supreme Court.

The case was tried at the Camden Circuit and a verdict rendered for the plaintiff.

For the plaintiff in error, *Joseph Beck Tyler*.

For the defendant in error, *John W. Wescott*.

The opinion of the court was delivered by

VROOM, J.    The plaintiff in error, Joseph W. Young, was engaged in the wholesale coal business in the city of Camden and had in his employ Joseph S. Barrett, the defendant in error, as driver of a coal wagon. The wagon was equipped with a gear used for elevating the body, known as the Radenhauser gear. The body of the wagon was elevated by the turning of a crank by the driver, and when run up was held in position by a piece of iron, called a dog, which fitted in the cog-wheel of the gear and held it in position.

There was some evidence that this wagon had an iron rod put under the front of it to keep it from tilting down when carrying a heavy load; this rod it appeared the plaintiff had put on the wagon without the knowledge of the defendant. It appeared also that on the day of the accident the plaintiff, when delivering a ton of coal, had raised the wagon body half the way up with the crank, so that the front of it was clear and the back was still resting on the bottom sill of the running gear, that as he reached his hand under the wagon to

put in the rod or pin above alluded to the dog broke and caught his arm between the wagon body and the sill. On being asked whether he examined the dog, he replied that he did while he was fast there, waiting for somebody to get him out; that it had a small flaw in it, a dark spot, that it was right in the small part of the dog, around what is called the shank, the narrowest part of it; that the remaining portion showed a fresh break, which looked right bright, just as though you would take a new piece of iron and break it in two cold, and that the thickness of the dog where it showed a bright surface was about half an inch, and that if the flaw had not been there it would have been three-quarters of an inch in thickness.

At the conclusion of the testimony of the plaintiff a non-suit was asked for and denied; although no reasons were given for such denial by the trial judge, it must have been upon the theory that the evidence of the plaintiff established facts from which negligence of the defendant might be inferred. For if the machinery for hoisting this wagon was out of repair in a vital point, as described by the plaintiff, then the question of the negligence of the master depended upon whether there was any evidence which tended to show that the defect in the dog was known to the master, or whether it would have become known had the wagon been subjected to a reasonable and proper inspection.

It was contended by the defendant, and correctly, I think, that the plaintiff absolutely failed to prove any facts showing that the master had knowledge of the alleged defect in the dog or sprag. It was proved that the master had had the wagon for about six years; that it was equipped with the best gear on the market; that the wagon had been examined and repaired three or four months before the accident; that the person in charge of the coal business for the master had personally inspected the dog and there was no defect in it, and that he examined the dog immediately after the accident; that it broke off right where the weight came, there was no flaw in it, the break was a fresh one throughout.

The only testimony offered by the plaintiff bearing upon the question whether an inspection would have disclosed a defect in the dog was that of the plaintiff himself. It was as follows:

"*Q.* Could it (the defect) be seen by looking at it before the break?

"*A.* Well, with a right close examination, it might have been seen.

"*Q.* Did you ever examine this dog to see whether there was any defect in it?

"*A.* No, sir."

Again being cross-examined:

"*Q.* The dog was painted all over?

"*A.* Yes, sir.

"*Q.* You couldn't see through the paint, could you?

"*A.* Well, it might have left a mark on the paint.

"*Q.* You don't know whether it did or not?

"*A.* No, sir."

And on being asked whether it could be seen before or not, he said he had never examined it close and couldn't swear it could be seen. This testimony amounts to no proof whatever that a reasonable inspection would have disclosed any defect in the dog.

The rule of duty resting upon a master in this class of cases is clearly laid down by Justice Magie in *Atz* v. *Manufacturing Company, 30 Vroom* 41: "It is that the master must take reasonable care to have and preserve such a machine reasonably safe for the work which the servant is employed to do with it. The master does not insure the safety of the machine, nor is he bound to extraordinary or the highest diligence respecting it, but only to use such reasonable precautions as a man of ordinary prudence would use for the safety of himself and his workmen under the circumstances. If such prudence requires inspection the inspection must be such as ordinary prudence would dictate, but the master will not be liable for an injury occasioned by a defect, the existence of which would not have been disclosed by such inspection as he was required to make."

At the close of the evidence the defendant moved a direction of a verdict for the defendant, upon the ground that the evidence did not show any negligence on his part, and that all the facts showed that the defendant used every precaution necessary and that was required of him by law.

The denial of this motion by the trial judge was error and the judgment below should be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, DILL, CONGDON, JJ. 15.