EDMOND ARCHER *vs.* EDWARD H. ELDREDGE & another, trustees.

Suffolk.    March 26, 1912. — June 19, 1912.

Present: RUGG, C. J., MORTON, BRALEY, SHELDON, & DeCOURCY, JJ.

*Negligence,* Employer's liability.

At the trial of an action by an employee against his employer for personal injuries received by reason of the unexpected starting of a hydraulic elevator, there was evidence tending to prove the following facts: The duties of the plaintiff were to operate certain hydraulic passenger elevators, to report to an engineer employed by the defendant anything that became out of order with the elevators and to do anything that the engineer asked him to do. Discovering that an elevator was stopping improperly between floors, the plaintiff notified the engineer, who went upon the top of the elevator to repair it and asked the plaintiff to come up to hold a "dog" on the shipper rope. The plaintiff went upon the elevator, when, without the shipper rope being touched by either the engineer or him, the car started upward. The plaintiff seized the shipper rope and pulled upon it and it moved, but the car continued to rise. The car was propelled by water admitted to its motor apparatus by valves. The shipper rope operated to open and close the valves. The dog in question was fastened to the shipper rope to raise it automatically at the top floor and thus automatically to cause the elevator to stop. *Held,* that the plaintiff assumed the risk of the injury that he received and therefore that he could not maintain the action.

TORT for personal injuries received by the plaintiff while in the employ of the defendants at the Hotel Bristol in Boston and

caused by a hydraulic passenger elevator starting up while the plaintiff was on its top assisting in repairing it. Writ dated August 1, 1904.

In the Superior Court the case first was tried before *Bond,* J. A verdict was returned for the plaintiff and exceptions of the defendants were sustained, as reported in 204 Mass. 323.

There was a second trial before *Morton,* J., at which there was evidence tending to show that because the plaintiff, whose duties were to operate elevators, to report to the defendants' engineer if the elevators became out of order and to do anything the engineer asked him to do, had reported to the engineer that the elevator car in question had been stopping improperly between floors, the engineer went on top of the car and undertook to repair it and asked the plaintiff to come up to hold the "dog" on the shipper rope while he made a screw tight. The dog was intended to operate to lift the shipper rope automatically at the terminal floors of the building, the lifting of the shipper rope in turn operating on the water valves and stopping the elevator. As the plaintiff was complying with the engineer's request, the elevator, without either of them having touched the shipper rope, shot up. The plaintiff seized the shipper rope and pulled upon it and it moved, but the elevator did not stop rising and he was injured.

An expert testified for the plaintiff in direct examination in part as follows: "Q. Assuming that the . . . elevator such as has been described here . . . starts up without the shipper rope being used, whether or not in your opinion the starting is caused by means of some part of the machinery of the elevator connected with the dog? A. Nothing to do with the dog.

"Q. Assume that . . . [such an] elevator is at rest and then starts up without the shipper rope being moved, and then in attempting to stop the elevator which is going up, the shipper rope is pulled and moved up, but the elevator fails to stop, whether or not in your opinion the failure to stop is caused by means of some part of the machinery of the elevator connected with the dogs? A. Nothing to do with the dog."

In cross-examination he testified as follows: "Q. If the valve was leaking and the dog was loose the car might continue to creep up? A. It would independent of the dog, whether the dog were there or not. — Q. But if the dog were there it would still continue?

A. Yes, sir, it would still continue. — Q. It would go slower if the dog was tight? A. It would reverse itself if the dog were there. — Q. If the dog was loose it would still continue? A. Yes, sir. . . .

"Q. Suppose the dog was tight there, suppose the valve was leaking and the dog was tight, what would the effect be? A. The elevator would reverse itself.—Q. And go down? A. And go down."

Other facts are stated in the opinion.

At the close of the evidence the judge ordered a verdict for the defendants and reported the case for determination by this court.

*F. R. Mullin,* (*W. P. Thompson & P. F. Spain* with him,) for the plaintiff.

*J. Lowell & J. A. Lowell,* for the defendants.

BRALEY, J. While the plaintiff was on top of the car of an hydraulic passenger elevator repairing a part of the operating machinery the car which had been stopped at the fourth floor automatically started upward, and its progress being unchecked he was caught and jammed between the car and a beam at the top of the well. At the close of the evidence a verdict was ordered for the defendants, and the case is here on report. The plaintiff, who operated the elevator, knew that it had been closed for repairs, and the attendant circumstances are so fully described in the former opinion when the case first came before this court that there is no occasion for their repetition. *Archer* v. *Eldredge,* 204 Mass. 323, 324, 325. It was then determined, even if the declaration contained counts under R. L. c. 106, § 71, alleging negligence of a superintendent or of some person entrusted with superintendence, that one Wright, whose orders the defendants directed the plaintiff to obey, was not acting within the meaning of the statute, and that upon the remaining counts charging them with negligence under the statute as well as at common law in failing to provide a suitable elevator, the evidence did not show any violation of this duty, and the defendant's exceptions accordingly were sustained. The evidence, however, at the second as well as at the first trial, shows that the engineer's duty required him to keep the elevator in running order, and at his request the plaintiff voluntarily assisted in repairing the upper dog on the shipping rope, which had become defective. If the dog did not work properly

the stopping of the elevator could not be effectively regulated, and when the elevator began to ascend it would continue on its way to the top of the well. The defect having been obvious the case of *Moylon* v. *D. S. McDonald Co.* 188 Mass. 499, where the plaintiff was ignorant of the manner in which the machinery controlled the car, is inapplicable, and the defendants were under no obligation to inform the plaintiff in the present case that the elevator had become unsafe, or to direct his attention to the specific defect which the engineer and himself were attempting to remedy. *Regan* v. *Lombard*, 192 Mass. 319, 323, 324. *Archer* v. *Eldredge*, 204 Mass. 323, 326. The plaintiff apparently does not seriously contend to the contrary, but urgently presses the argument, that "if while repairs had been in progress upon the elevator, it had started by means of some part of the mechanism quite disconnected with that undergoing repair," he should have been permitted to go to the jury. *Archer* v. *Eldredge*, 204 Mass. 323, 325. To bring himself within this exception he introduced competent evidence from which the jury could have found, that the sudden starting of the car arose from the failure of the shipper rope properly to open and close at the terminal floors the valve with which it was connected. But even if the car while stationary might not have automatically started if the valve had not leaked, the undisputed fact remains, that the valve, shipping rope and upper dog were interdependent in the operation of the elevator, and if the dog which he was repairing had been in working order the car would have stopped and not ascended, and the accident would have been prevented. We are unable to discover any substantial distinction in the essential questions presented by the record from those which were passed upon in the former opinion, and the plaintiff having assumed the risk of whatever happened, judgment for the defendants is to be entered upon the verdict. *Malden & Melrose Gas Light Co.* v. *Chandler*, 211 Mass. 226, 227.

*So ordered.*