## Moses B. Anderson *v.* Howe Scale Company.

### Special Term at Rutland, November, 1915.

Present: Munson, C. J., Watson, Haselton, Powers, and Taylor, JJ.

### Opinion filed May 6, 1916.

*Master and Servant—Injuries to Servant—Burden of Proof—*
*Safe Working Place—Safe Appliances—Elevator—Servant*
*Engaged in Repair or Inspection—Defect in Machinery—*
*Assumption of Risk—Master's Nondelegable Duty—Neglect*
*of Employee—Choice of Bolt.*

In order to recover against his master for injuries, a servant must show some shortage of the master's duty to him.

The rule prescribing the master's duty in respect of furnishing his servant a safe working place and safe machinery and appliances relates only to conditions that properly constitute a working place, and has no application where the servant's work consists in making repairs or inspecting and testing to discover defects.

A master owes his servant no duty in respect of furnishing a safe working place and safe machinery and appliances until the master has actual or imputed knowledge of the defective condition of his premises or machinery or appliances, therefore, where new machinery is installed, which ordinary care requires to be tested before used, the master cannot be held liable without reasonable opportunity to make the test, and so where there is a latent defect in such machinery, negligence cannot be imputed to the master unless and until he has reasonable opportunity to discover the defect.

Where a servant who had been engaged in the repair of an elevator in a foundry that was shut down for repairs, and who knew that the elevator had not been tested and that a test was about to be made by the master mechanic, ran a car of pig iron thereon, and then raised and lowered it, and raised it again, and was finally injured by the fall of the elevator, owing to the breaking of a bolt, he assumed the risk as one incident to his employment, regardless of whether he attempted to test the carrying capacity of the elevator or merely to adjust it to height under a load, and incidentally to provide material for use when work should be resumed.

Where the competent master mechanic of a corporation that operated
a foundry examined an elevator bolt that had proved sufficient for
a like previous use and, through at most an error of judgment,
pronounced it sufficient, the corporation was not guilty of negli-
gence in selecting the bolt.

Though it was the nondelegable duty of a corporation operating a
foundry to use the care of a prudent man to make an elevator safe
before putting it to use by its servants, it fulfilled that duty by
making it the duty of its competent master mechanic to give the
elevator a thorough test before it was put to use.

CASE for negligence. Plea, the general issue. Trial by
jury at the March Term, 1914, Rutland County, *Miles*, J., presid-
ing. Verdict directed for the defendant. The plaintiff ex-
cepted. The opinion states the case.

*E. H. O'Brien* and *Charles L. Howe* for the plaintiff.

*W. B. C. Stickney* and *T. W. Moloney* for the defendant.

TAYLOR, J. This is an action for personal injuries and a
trial by jury was had with verdict directed for defendant. There
was very little conflict in the testimony. In the view most favor-
able to the plaintiff the testimony disclosed the following facts.

Defendant owns and operates an extensive scale factory in
the city of Rutland. At the time of his injury plaintiff was em-
ployed in defendant's foundry where he had been engaged for
twenty-three years, four years as a moulder and the last nineteen
years as a melter. At the time of the accident he was assistant
foreman in the melting department. There was an elevator in
that part of the factory where plaintiff was employed used to
lift iron and other materials to the level of the cupola of the
furnace where the melting was done. Iron destined for the
furnace would be loaded onto a car on the ground floor, the car
would then be run onto the elevator and raised to the level of
the floor above, where the car would be taken from the elevator
onto a track leading to the cupola. Among plaintiff's duties he
was expected to see to the loading of the iron and its transporta-
tion by way of the elevator to the floor above. Plaintiff was ac-
customed to operate the elevator and was familiar with its con-
struction.

It was the custom of the defendant to shut down its factory annually for about two weeks for the purpose of taking an inventory, inspecting the plant and making necessary repairs. At the time of the accident the factory was not in operation, it being the time of the annual inspection. Among the repairs being made the defendant was constructing a new steel elevator cage to take the place of the wooden cage previously used on the elevator in question. The elevator was attached to the hoisting apparatus by means of a U bolt and a turnbuckle. The bolt spanned the crossbeam at the top of the cage and was held in place by a strip of iron under the beam that served as a washer to receive the free ends of the bolt, on which were nuts securing it in place. The curve of the bolt passed through the lower end of the turnbuckle, the upper end of which was attached to the hoisting rope. The U bolt and turnbuckle used on the old elevator were used to connect the new cage with no change, except that it became necessary to alter the shape of the bolt a little to adjust it to the new cross-beam; but whether by spreading or contracting it did not appear.

The elevator was operated by compressed air furnished by a compressor situated in the engine room. A rope connected with the elevator served to open or close the valves which controlled the air. The apparatus was so devised that when properly adjusted the piston in the air chamber would travel the proper distance to raise or lower the cage from one floor to the other, so that it would stop automatically at the proper level. This adjustment was secured by means of the turnbuckle.

During the time inspection and repairs were being made only such employees were retained in the service as were required for that purpose. Plaintiff had been at work up to the day of the accident in making repairs in the foundry and had not been engaged in the work on the elevator, although he knew what was being done there. A Mr. Braley was defendant's master mechanic, having general supervision of repairs, and the work on the elevator was being done under his direction and superintendence. A Mr. Henchey was assistant foreman of the repair shop and was in charge of the work on the elevator under Braley, receiving orders from him to go ahead and build the cage in a certain way. The cage had been built in the repair shop, taken down and the parts reassembled in position in the elevator by other workmen under Henchey's direction, and the

connection had been made with the hoisting apparatus the day before the accident. It remained to adjust the elevator so that it would stop at the proper level, which could only be done when it was carrying a load.

As defendant's business was conducted, it was the duty of the master mechanic, after the repairs on the elevator were completed, to make a thorough inspection of its parts, including the U bolt, and to test it under a load before it was turned over for use. Braley had inspected the cage after it was assembled in the repair shop but had not inspected the elevator after the cage was in position, except in a casual way as he was passing while the work of setting it up was going on. Henchey had examined the U bolt after it was reshaped by the tool-dresser and discovered no trouble with it—thought it was all right. No test had been made of the elevator, except that Henchey had seen it run a few times without a load. No one representing the defendant had given the elevator, and particularly the U bolt, any close inspection after the hoisting apparatus was attached. Braley had no opportunity to make the inspection and test required of him for reasons that will appear. He was a witness for defendant and testified that it was his intention to test the carrying capacity of the elevator by putting on a load of about 8,000 pounds, which was its approximate power capacity; that he wanted to make a thorough test before it was put to use. There was no evidence tending to disprove his testimony in this regard. Preparatory to making this test Braley directed that a load of pig-iron be placed on the car, which was done by plaintiff and others under his direction. The testimony as to what was told plaintiff about loading the car was somewhat indefinite. Braley testified that, the night before the accident, he told Henchey or some one to see that a load was gotten together to test the elevator and that he would test it out the next morning. Henchey testified that he may have asked plaintiff if it wouldn't be a good idea to put on a load of pig-iron and adjust the elevator. Another witness who assisted about loading the iron testified that plaintiff told him he wanted a load of pig-iron on the elevator to adjust it and see if it worked right. This was all the evidence as to how plaintiff came to load the iron and it was uncontradicted.

The accident occurred Saturday morning before the factory was to start up the next Monday. Plaintiff and his helpers

loaded the car with 3,500 to 4,500 pounds of iron. When ready, plaintiff found Braley, who with Henchey was in the engine room inspecting the engine, and told him the load was ready. Braley replied: "In a few minutes; as soon as possible." As soon as Braley could leave, he started the air compressor to supply air for the elevator and at the same time Henchey went out. As he was about going out Braley noticed an unusual noise from the compressor and stopped to see about it. While thus engaged one of the workmen who had assisted plaintiff in preparing the load was sent in to say that they·were ready, to which Braley replied: "I will be there in a few minutes; just as quick as possible." The evidence indicated unmistakably that Braley desired and was intending to see the elevator test made and that there was no occasion for undue haste on the part of the plaintiff and his associates.

Without waiting for Braley, plaintiff with the assistance of Henchey and others ran the loaded car onto the elevator and walked up the stairs to the floor above. Plaintiff applied the power and the elevator came up, but stopped a little below the level of the floor. Plaintiff then lowered the elevator and Henchey adjusted the turnbuckle. Plaintiff again applied the power and the car came up, this time level with the floor. Plaintiff, Henchey and another workman stepped onto the elevator and attempted to push the car off onto the floor in the same manner as had always been done, when the U bolt broke and the elevator fell, injuring plaintiff.

There was no evidence of any obvious defect in the bolt and no explanation of its having given out except the possible inference to be drawn from Henchey's testimony that when he received the bolt from the tool-dresser it looked as if it had been "heat." There was no evidence that it had been weakened thereby, except the fact that it broke. Plaintiff admitted that he knew the bolt was the one used in the old elevator and that this was the first load taken up after the repairs. He testified that he walked up the stairs because the elevator was new and he didn't know how it would work. The load on the elevator was not more than the bolt had been subjected to previously. It broke at the point of attachment to the turnbuckle and spread, thus letting the cage fall.

Braley testified that Henchey brought the bolt to him when it was removed from the old elevator and questioned its suf-

ficiency; that from examination then made he judged it sufficient for the use intended and so informed Henchey, but told him if he didn't like the bolt to get another. Henchey denied such an occurrence.

The only question presented is an exception to the action of the court in directing a verdict for defendant. Plaintiff claims that the evidence was sufficient to carry the case to the jury. We may assume without deciding that, if the accident had occurred in the ordinary course of defendant's business, after the elevator had been turned over for use by its employees, the evidence tending to show that defendant was put on inquiry as to the sufficiency of the bolt would have made a case for the jury on the question of defendant's negligence. See *Matteson* v. *Holt et al.*, 45 Vt. 336. But such is not this case. It is fundamental that before plaintiff can recover he must show that defendant omitted some duty owed to him. He argues that defendant owed him the duty of furnishing a reasonably safe place and reasonably safe machinery in and with which to work; and relies upon the numerous cases in this State on that subject. He states the general rule correctly regarding the master's duty to furnish his servant a safe working place, but passes unnoticed the fact that the rule regarding a safe place and safe machinery and appliances does not apply to cases in which the work the servant is engaged upon consists in making repairs or inspecting and testing to discover defects. The rule relates only to the condition of premises, machinery, etc., which properly constitute a working place. *Keefe* v. *Armour & Co.*, 258 Ill. 28, 101 N. E. 252, Ann. Cas. 1914 B, 188. In the case cited the rule was held not to apply to a boiler maker who was testing a boiler for leaks. For cases in which the distinction is specially noted, see *Ahston* v. *Boston & M. R.* (Mass., 1915) 109 N. E. 820; *Archer* v. *Eldredge et al.*, 204 Mass. 323, 90 N. E. 525; *Boisvert* v. *Ward*, 199 Mass. 594, 85 N. E. 849; *Willis* v. *Plymouth, etc., Tel. Ex.*, 75 N. H. 453, 75 Atl. 877, 30 L. R. A. (N. S.) 477; *Murphy* v. *Guning System*, 184 Ill. App. 454; *De Sandro* v. *Light, etc., Co.*, 48 Mont. 226, 136 Pa. 711; 26 Cyc. 1148.

The same principle is recognized in our own cases. *Hoadley, Admr.* v. *International Paper Co.*, 72 Vt. 79, 47 Atl. 169; *Sias* v. *Consolidated Light. Co.*, 73 Vt. 35, 50 Atl. 554; *Conroy's Admx.* v. *Nelson*, 86 Vt. 175, 84 Atl. 737.

It was said in *Dartmouth Spinning Co.* v. *Achard*, 84 Ga. 14, 105 S. E. 449, 6 L. R. A. 190: "While it is the duty of the master to furnish his servant safe machinery for use, he is under no duty to furnish his machinist safe machinery to be repaired, or to keep it safe while repairs are in progress. Precisely because it is unsafe for use, repairs are necessary. The physician might as well insist on having a well patient to be treated and cured, as the machinist to have sound and safe machinery to be repaired."

We may start with the general proposition that no duty attaches until the master has actual or constructive knowledge of the defective condition of his premises or machinery; and where new machinery is installed which ordinary care would require to be tested before being put to use, the master cannot be held liable without reasonable opportunity to make the test. In other words, in case of a latent defect in machinery, negligence will not be imputed, unless and until the master has reasonable opportunity to discover the defect.

The undisputed evidence was that the bolt had been in use some two years, being subjected to equal or greater loads in comparison with the load under which it broke. Plaintiff did not claim there was any obvious defect and produced no evidence tending to show lack of prudence in using the bolt to attach to the new cage. He did not attempt to explain why the bolt, which had done the same work in the past with safety, failed the first time the new elevator was used, unless the testimony of Henchey as to its appearance justified such an inference. But as to this there was not even a suggestion that there was any indication that the bolt had been weakened by heating. In short, the whole matter as to how the bolt became insufficient is left to speculation. On all the evidence the defect was latent and there was no evidence that it could have been discovered in any other way than by the test that Braley, whose duty it was to make it, was about to undertake. The elevator had not been turned over to the employees of the factory for use; and there was no unreasonable delay in making the test. In fact, the evidence disclosed impatience and even unreasonable haste on the part of plaintiff and his associates. There was no evidence that Henchey had authority to order the elevator started for the purpose of adjusting it, if his inquiry of the plaintiff can be taken as relating to the time when this was done. In the circumstances, knowing

as he did that the elevator had not been tested and that a test was about to be made, plaintiff had no right to assume that it was safe. He must be held to have undertaken the risk attending the experiment as an incident of his present employment.

The result is the same whatever plaintiff understood to be the purpose of putting the load onto the elevator. Plaintiff contends that it was not as a test of strength, but for the sole purpose of adjusting it, and incidentally to provide material for use when the work should be resumed. Defendant insists that the load was provided for the purpose of testing the elevator and that plaintiff's injury occurred while voluntarily making such test. The fact that the iron was destined for use in the foundry after the test was made does not change the situation. If the purpose of the load was to test the elevator and that was plaintiff's object in starting it, he was engaged in work, properly within his employment, which the defendant was required to do in the discharge of its duty. The risk of its proving defective was an incident of the employment, as the very work being done was searching for defects such as that by which plaintiff was injured. Of necessity Braley would not be required to make the test alone, but could properly direct other employees to perform the work. If they undertook it, they also undertook the attendant risks. *Latremouille* v. *Bennington & R. Ry. Co.*, 63 Vt. 336, 345, 22 Atl. 656; *Archer* v. *Eldredge et al.*, 204 Mass. 323, 90 N. E. 525. On the other hand, if the purpose of plaintiff and Henchey was merely to adjust the height of the elevator under a load, still the risk was voluntarily assumed under circumstances that preclude recovery. Plaintiff knew that no test had been made and that Braley was the one to inspect and determine whether the elevator was ready to be put into use; for he notified him that the load was ready and in effect was told that Braley would attend to the matter personally.

Besides, whatever plaintiff's purpose was, placing the load upon the elevator served the purpose of a test without which, so far as appears, the defect could not have been discovered. *Bauman* v. *Cowdin et al.*, 75 N. J. L. 193, 66 Atl. 914, is a case much in point. There plaintiff while employed by defendants as a fireman in their boiler room was injured by the explosion of a new boiler cleaner the first time it was used, owing to a latent structural defect. When steam was admitted to the cleaner it was found that a valve leaked and the engineer di-

rected plaintiff to tighten it. While engaged in this work the accident occurred as a result of the pressure of steam. It was argued that defendants neglected to make a proper test of the cleaner before setting plaintiff to work around it. It appeared that the only proper test was by the introduction of steam and that the method of making the test did not occasion the explosion. The Court says: "It would be quite illogical to find the defendants negligent for doing the very thing which, upon plaintiff's contention, they were obliged to do in the performance of their duty to him. * * * * Nor is it of any significance, if it be the fact, that the introduction of steam was with a view to the actual operation of the cleaner, and not to a trial test. The first time the steam was introduced answered all the purposes of a test. * * * Nor can the plaintiff complain because he was the employee who helped start the working of the apparatus. The defendants had the right to start it through some of their employees and there is no suggestion that the work was not properly within the plaintiff's line of duty." See also *Reynolds* v. *Merchants' Woolen Co.*, 168 Mass. 501, 47 N. E. 406.

It cannot be said that the defendant was guilty of negligence in the first instance in selecting the bolt. No question is made as to Braley's competency. In the course of his employment as master mechanic, he examined the bolt and pronounced it sufficient. Previous use had demonstrated its sufficiency. At most, a mistake in its choice was an error of judgment for which defendant cannot be charged with negligence. Though defendant's duty to furnish its servants a safe elevator with which to perform their work was non-delegable (*Brown* v. *People's Gas Light Co.*, 81 Vt. 477, 71 Atl. 204, 22 L. R. A. (N. S.) 738), and it would still be defendant's duty to take reasonable precautions to see that the appliance was safe, it endeavored to meet this requirement by making it the duty of the master mechanic to give the elevator a thorough test before it was put to use. As we have seen, there was no shortage of duty in that regard.

The court did not err in directing a defendant's verdict.

*Judgment affirmed.*